[Cite as *State v. Reed*, 2018-Ohio-3040.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105862**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RONALD J. REED**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605771-A

**BEFORE:** Kilbane, P.J., Boyle, J., and Keough, J.

**RELEASED AND JOURNALIZED:** August 2, 2018

**ATTORNEY FOR APPELLANT**

Steve W. Canfil
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Andrew T. Gatti
Anne Mikhaiel
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113




MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Ronald J. Reed ("Reed"), appeals from his convictions for attempted felonious assault, abduction, and domestic violence. For the reasons set forth below, we affirm.

{¶2} In May 2016, Reed was charged with one count each of felonious assault, abduction, and domestic violence. These charges arose out of a physical altercation with his girlfriend.

{¶3} In August 2016, Reed pled guilty, pursuant to a plea agreement with the state, to attempted felonious assault, abduction, and domestic violence. At the outset of the plea hearing, the assistant county prosecutor outlined the state's plea offer. Reed's defense counsel then

explained that he "had numerous, numerous conversations with [Reed] regarding the plea," and it was his opinion that "[Reed will] make a knowing, intelligent and voluntary change of plea."

{¶4}   The trial court then asked Reed if he had heard and understood the plea offer.   In response, Reed was reluctant:

[REED]:   I think.   I think so.

THE COURT:   Was there anything that you have a question about?

[REED]:   The situation that happened at my residence, just that I don't know what my rights was [sic].   You know, when I asked her to leave, she wouldn't leave.   I don't know.

[DEFENSE COUNSEL]:   Judge, if I might clarify, many times Mr. Reed and I have talked about his potential defenses of self-defense, and being at his own property at the time this event occurred and we've talked about that a lot.   And he understands in my opinion, that by entering this plea, we're not going to be talking about self-defense anymore.

[REED]:   No, I don't, sir.

[DEFENSE COUNSEL]:   Or defense of property or anything along that line.

[REED]:   Okay.

{¶5} Next, the trial court asked Reed how far he went in school, to which Reed replied, "[n]ot far because I have learning disabilities."   In response to further questioning, Reed replied that he went as far in school as sixth or seventh grade, could read and write, and that he was satisfied with defense counsel's representation.   The trial court then advised Reed of the constitutional rights he would waive by entering a guilty plea, and Reed acknowledged that he understood he was giving up these rights.   The trial court further advised Reed of the possible penalties for the charges outlined in the plea agreement as well as postrelease control.   Reed replied that he understood each of these concepts.

{¶6} After the trial court read the charges in the amended indictment, Reed again interjected, asking to comment. The trial court instructed Reed to speak with counsel, allowing a short recess off the record. After the recess, defense counsel explained Reed's concern about the abduction count, and his own belief that this offense would likely merge with the attempted felonious assault conviction for purposes of sentencing. The state agreed these offenses would merge at sentencing.

{¶7} The trial court then continued on with the plea colloquy, and accepted Reed's guilty plea to the amended indictment. The trial court referred Reed to the probation department for a presentence investigation report ("PSI"), and set the matter for sentencing. At sentencing, the trial court determined that Count 1 (attempted felonious assault) and Count 2 (abduction) constituted allied offenses of similar import that merged for purposes of sentencing. The state elected to proceed on Count 1. The trial court sentenced Reed to two years of community control sanctions for Counts 1 and 3.

{¶8} In June 2017, Reed moved this court, pro se, for leave to file a delayed appeal and for appointment of appellate counsel. We granted Reed leave to file a delayed appeal and appointed him counsel.

{¶9} In September 2016, Reed's original appellate counsel filed a brief and moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) ("[I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." *Id.* at 744). Our independent review of the record found that "a nonfrivolous issue exists regarding the knowing nature of Reed's guilty plea." Accordingly, we granted original appellate counsel's motion to withdraw,

but we declined to dismiss Reed's appeal, appointed him new counsel, and ordered this case returned to the active docket for briefing.

{¶10} Reed now raises the following two assignments of error for our review:

## Assignment of Error One

The trial court violated [Reed's] federal and state constitutional rights to due process of law and Crim.R. 11 when it accepted [Reed's] guilty plea[].

## Assignment of Error Two

[Reed] was deprived of his federal and state constitutional rights to effective assistance of counsel.

## Guilty Plea

{¶11} In the first assignment of error, Reed challenges the validity of his guilty plea, arguing that the record demonstrates that he did not knowingly, intelligently, and voluntarily enter his plea.

{¶12} Crim.R. 11(C)(2) governs the trial court's acceptance of guilty pleas in felony cases. It provides, in relevant part:

(2)  In felony cases the court may refuse to accept a plea of guilty  * * * and shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:

(a)   Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b)  Informing the defendant of and determining that the defendant understands the effect of the plea of guilty * * * and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c)  Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the

defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶13} The purpose of Crim.R. 11(C) is to convey to the defendant certain information so that he or she can make a voluntary and intelligent decision whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). In considering whether a criminal defendant knowingly, intelligently, and voluntarily entered a guilty plea, we first review the record to determine whether the trial court complied with Crim.R. 11(C). *State v. Davner*, 8th Dist. Cuyahoga Nos. 104745 and 105144, 2017-Ohio-8862, ¶ 41.

{¶14} We review a trial court's compliance with the requirements set forth in Crim.R. 11(C) under a de novo standard of review. *State v. Darling*, 8th Dist. Cuyahoga No. 104517, 2017-Ohio-7603, ¶ 17. We review the totality of the circumstances surrounding the defendant's plea to determine whether it was entered into knowingly, intelligently, and voluntarily. *State v. Alvelo*, 2017-Ohio-742, 85 N.E.3d 1032, ¶ 21 (8th Dist.).

{¶15} A trial court must strictly comply with Crim.R. 11(C) where constitutional rights are involved. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18. However, with respect to the nonconstitutional notifications required by Crim.R. 11(C)(2)(a) and (b), substantial compliance is sufficient. *Id*. at _ 14.

{¶16} Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Additionally, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made because the trial court failed to substantially comply with any of the nonconstitutional

notifications under Crim.R. 11 must show a prejudicial effect. *Id.*, citing *State v. Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163 (1977); Crim.R. 52(A). The relevant test is whether the plea would have otherwise been made. *Id.*

{¶17} Reed argues that the trial court failed to ensure that he understood the consequences of his guilty pleas. Specifically, he claims he was not fully advised of the nature of the charges to which he was pleading guilty, the possible merger of offenses, and the maximum penalties involved.

{¶18} We first address Reed's contention that the trial court failed to ensure his understanding of the maximum penalties involved because he replied "possible," when the trial court questioned his understanding on that point. We find this argument unpersuasive.

{¶19} The record demonstrates that the trial court explained to Reed the range of *possible* penalties involved. Reed appeared to ask for clarification, and acknowledged that he understood that the range of penalties discussed were all possible penalties.

> THE COURT: Now, the possible penalties for these crimes are as follows. Count 1 [attempted felonious assault] is a felony of the third degree. That would get you anywhere from 9 to 36 months in prison, with a fine of up to $10,000. Same with Count 2 [abduction], and Count 3 [domestic violence] would be a possible 6 to 18 months in prison, with a fine of up to $5,000. Do you understand all of that?
>
> [REED]: Possible.
>
> THE COURT: It's possible. Not definite.
>
> [REED]: Right.
>
> THE COURT: Okay?
>
> [REED]: (Indicating yes.) Yes, your Honor.

{¶20} Based upon the foregoing exchange, we find that the trial court substantially complied with the requirement under Crim.R. 11(C)(2)(a) to advise Reed of the possible

penalties involved as a result of the plea agreement.  We further find that Reed subjectively understood that the penalties within the range discussed by the trial court were all possible penalties as a result of his guilty plea.

{¶21} Reed next argues that the confusion he expressed at the plea hearing regarding the nature of the charges against him and the merger doctrine indicates that his guilty plea was not knowingly, voluntarily, and intelligently entered.

{¶22} After the trial court read the charges in the amended indictment to Reed and asked him how he plead to those charges, Reed interjected:

[REED]:   Can I say?   Can I comment?

THE COURT:   Talk to your lawyer.

{¶23} After a brief off-the-record discussion between Reed and his defense counsel, counsel explained to the trial court:

[DEFENSE COUNSEL]:   Judge, if I may place on the record, my client's concern is regarding the abduction count and I explained to him and maybe I should for the record, that this is not an abduction/kidnapping sort of situation with ransom notes and all that sort of stuff.   The act of assault is what constituted the abduction.   It wasn't like he was locking her up in a room or anything along that line, right, Mr. Reed?   And I, on his behalf, would certainly argue now and at the time of sentencing for purposes of sentencing, these offenses, the merger doctrine might apply.

[THE STATE]:   We would agree with that.

* * *

THE COURT:   Good.   Okay.   So, knowing everything we've gone over _

[REED]:   I don't understand it but _

THE COURT:   Knowing everything we've gone over, Mr. Reed, how do you want to plead to the charges that I read off to you?

[REED]:   I guess guilty.

THE COURT: Well, we need more than you guess.

[REED]: Guilty.

THE COURT: Okay. Has anybody made any threat or promise in order to get you to plead guilty?

[REED]: No.

THE COURT: Okay. And whose desire it is to plead guilty? Are you doing it now because you want to, or because somebody else is telling you to plead guilty?

[REED:] Because I want to, your Honor.

{¶24} The court then accepted Reed's plea, finding that Reed understood, and voluntarily and willingly waived his constitutional rights.

{¶25} Upon our de novo review of the record, we find that the trial court substantially complied with the requirement under Crim.R. 11(C)(2)(a) that it personally address Reed to determine whether he made his plea voluntarily, with understanding of the nature of the charges involved. *Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, at _ 14. The trial court remedied Reed's initial confusion about the plea agreement by allowing Reed to discuss with counsel. Defense counsel explained Reed's hesitation about the abduction charge to the trial court and explained to Reed on the record the nature of that charge. The trial court then questioned Reed as to his understanding of the plea offer and the voluntariness of his plea, and Reed stated his desire to plead guilty.

{¶26} With regard to Reed's argument that his guilty plea was not knowingly made because he did not understand the merger doctrine, we note that there is no requirement in Crim.R. 11 that the trial court must ensure a defendant understands the merger of offenses for purposes of sentencing before accepting his plea. Indeed, there is "'no obligation under Crim.R. 11(C)(2) for the trial court to determine, at a plea hearing, whether the offenses at issue are allied

offenses of similar import and to notify the defendant of the cumulative maximum penalty after merger.'" *State v. Carnahan*, 3d Dist. Defiance No. 4-15-18, 2016-Ohio-3213, ¶ 23, quoting *State v. Jefferson*, 2d Dist. Montgomery No. 26022, 2014-Ohio-2555, ¶ 21. "'[T]he merger of allied offenses of similar import occurs at sentencing.'" *Id.*, quoting *Jefferson* at ¶ 21.

**{¶27}** Likewise, after review of the totality of the circumstances surrounding Reed's plea, we find that Reed subjectively understood the implications of his plea. *Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474. Reed does not point to any prejudicial effect arising from his possible misunderstanding of the maximum penalties involved, the abduction charge, or the merger doctrine.

**{¶28}** Based on the foregoing, we find that Reed made his guilty plea knowingly, voluntarily, and intelligently. We further find the trial court did not err in accepting Reed's guilty plea.

**{¶29}** Accordingly, the first assignment of error is overruled.

<u>Ineffective Assistance of Counsel</u>

**{¶30}** In the second assignment of error, Reed argues he was deprived of the right to effective assistance of counsel. Specifically, he claims his defense counsel's performance was deficient because counsel failed to obtain Reed's psychological assessment for a possible referral to the court's mental health docket. Reed also argues that counsel failed to fully explain to him the ramifications of his guilty plea.

**{¶31}** This court has explained that a defendant who enters a guilty plea waives ineffective assistance of counsel claims except to the extent that the ineffective assistance of counsel caused the defendant's plea to be less than knowing, intelligent, and voluntary. *Davner*, 8th Dist. Cuyahoga Nos. 104745 and 105144, 2017-Ohio-8862, at ¶ 38.

Thus, where a defendant has entered a guilty plea, a defendant can prevail on a claim of ineffective assistance of counsel only by demonstrating (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, that caused his guilty plea to be less than knowing, intelligent and voluntary and (2) that there is a reasonable probability that, but for counsel's deficient performance, the defendant would not have pled guilty to the offenses at issue and would have, instead, insisted on going to trial.

*Id.*, citing *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11. *See also Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "A 'reasonable probability' is a 'probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

**{¶32}** Reed argues his mental health problems, as evidenced in the PSI, should have prompted his attorney to obtain his psychological assessment for a determination of whether Reed was eligible for the court's mental health docket. Reed maintains that he would not have pled guilty had he been evaluated for the mental health docket.

**{¶33}** Reed does not argue, however, that defense counsel's failure to move for a mental health evaluation "fell below an objective standard of reasonable representation, that caused his guilty plea to be less than knowing, intelligent and voluntary." *Danver* at ¶ 38. This court has explained that "'[j]udicial scrutiny of counsel's performance is to be highly deferential, and reviewing courts must refrain from second-guessing the strategic decisions of trial counsel.'" *State v. Hudson*, 8th Dist. Cuyahoga No. 102767, 2015-Ohio-5424, ¶ 9, quoting *State v. Carter*, 72 Ohio St.3d 545, 558, 1995-Ohio-104, 651 N.E.2d 965. Indeed, "'[t]rial counsel is entitled to a strong presumption that all decisions fell within the wide range of reasonable, professional assistance.'" *Id.*, quoting *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267.

{¶34} Reed points to the PSI as the basis of his claim that his mental health problems should have prompted counsel to seek Reed's psychological evaluation. However, we note the PSI was prepared after the plea hearing for purposes of sentencing. The record does not demonstrate that counsel was aware of Reed's mental health issues prior to reading the PSI.

{¶35} Loc.R. 30.1 of the Court of Common Pleas of Cuyahoga County, General Division, establishes a mental health docket for "[d]efendants with a confirmed severe mental illness with a psychotic feature or developmental disabilities[.]" Loc.R. 30.1(A). In cases where the defendant's eligibility is not determined until after arraignment, reassignment of the case to the mental health docket is discretionary. *See* Loc.R. 30(C)(2)(a); *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 30. Thus, even if counsel had moved to have Reed evaluated for a possible referral to the mental health docket, and he was determined eligible, the trial court was not obligated to transfer this case.

{¶36} Reed also argues that counsel was ineffective for leading Reed to believe that he lacked any defenses to the charges "when the record belies such a belief." In support of this claim, Reed points to his own version of the physical altercation with the victim as told to the probation officer and recorded in the PSI. Reed argues the victim's medical records and statements to police following the incident indicate that she may have not suffered any injuries as a result of his actions. Reed contends the record supports a conclusion that he did have viable defenses to the charges against him, despite his attorney's representations to the contrary.[1]

{¶37} These assertions are unsupported in the record. As it relates to Reed's statement to the probation offer contained in the PSI, a defendant "cannot rely on post-plea statements or

---

[1] We note that at the plea hearing, counsel never stated Reed did not have any possible defenses to the charges in the indictment, but merely stated "[Reed] understands in my opinion, that by entering this plea, we're not going to be talking about self-defense anymore."

claims of innocence to establish that the trial court erred in accepting [his] plea." *State v. Damron*, 2d Dist. Champaign No. 2014-CA-15, 2015-Ohio-2057, ¶ 10.   In the PSI, Reed does not fully claim his innocence, but rather, his version of events paints his former girlfriend as the instigator of their physical dispute.

**{¶38}** Ultimately, Reed does not meet his burden to show ineffective assistance of counsel because he does not demonstrate that counsel's actions "fell below an objective standard of reasonable representation, that caused his guilty plea to be less than knowing, intelligent and voluntary."   *Davner* at _ 38.

**{¶39}** Accordingly, the second assignment of error is overruled.

**{¶40}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MARY J. BOYLE, J., and
KATHLEEN ANN KEOUGH, J., CONCUR