[Cite as *State v. Pagan*, 2019-Ohio-4954.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                            :

    Plaintiff-Appellee,             :

                                          No. 19AP-216
v.                                        :        (C.P.C. No. 16CR-7225)

Christian J. Pagan,                       :        (REGULAR CALENDAR)

    Defendant-Appellant.            :

---

D E C I S I O N

Rendered on December 3, 2019

---

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Seth L. Gilbert,* for appellee. **Argued:** *Seth L. Gilbert.*

**On brief:** *Jeremy Dodgion,* for appellant. **Argued:** *Jeremy Dodgion.*

---

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Christian J. Pagan, represented by counsel, entered into a plea agreement to resolve two criminal cases against him. The trial court accepted his guilty pleas and sentenced him to prison terms totaling within the range that the state and Mr. Pagan had defined through their agreement. Mr. Pagan now appeals, but he provides scant basis on which to overturn either his convictions or his sentence. We will affirm the judgment of the trial court.

{¶ 2} Mr. Pagan, who the state alleged was not allowed to possess a gun because of earlier convictions for aggravated assault and robbery, was indicted in one case (16CR-7203) for having a weapon under disability and for felonious assault and kidnapping with gun specifications. Prosecutors were having difficulties reaching the purported victim in

that case, whom Mr. Pagan allegedly had pistol-whipped.  *See* January 28, 2019 Transcript of Plea Proceedings ("Plea Tr.") at 3, 19.

{¶ 3}    Mr. Pagan was indicted in the other case (16CR-7225) for two first-degree felony counts of trafficking in cocaine in an amount exceeding 100 grams, two parallel cocaine possession counts, and again with having a weapon under disability.  The drug charges carried gun specifications.

{¶ 4}    Under the plea agreements, the state dropped the felonious assault and kidnapping charges in the first case, and dropped the weapons charge and the possession counts and gun specifications in the second case, while also reducing the amount of cocaine charged on the trafficking counts from the previously specified Major Drug Offender ("MDO") levels to 27-100 grams.  Mr. Pagan and the state noted on the plea forms in each case that, for the two cases combined, the parties "agree to argue for a sentence between 10 and 18 years."  Mr. Pagan and the state also agreed and stipulated in the plea form for the drug case that the trafficking "counts do not merge" and that the potential sentence there was "3 to 11 years mandatory on each count."

{¶ 5}    The trial court reviewed the plea agreements with Mr. Pagan, his counsel, and the prosecutor during the plea colloquy.  After the prosecutor explained the potential advantage to the defendant in removing the MDO amounts from the trafficking counts (which as charged carried a mandatory maximum prison sentence, "plus the one-year gun spec"), the prosecutor added that with his plea, "Mr. Pagan is looking at a minimum of three years and up to twenty-two years [for that case] * * * because those two offenses do not merge."  Plea Tr. at 5.  He continued:  "the recommendation that we've gotten to [of] between 10 and 18 years [for the two cases combined] is a negotiated plea * * *."  Had the drug case gone to trial, the prosecutor said, defense counsel would argue at any sentencing hearing "that those two [trafficking counts] would merge because of the facts of the case."  *Id.*  But, said the prosecutor, "while he would preserve that for trial, for plea we're agreeing that they don't merge."  "Essentially, there's one large quantity of cocaine, and separated from that is another large but smaller quantity of cocaine in the same room seized at the same time.  There might be a merger argument; but because of our joint recommendation," that argument had been forestalled.  Instead, the prosecutor continued, defense counsel

"[is] going to ask for concurrent sentences * * *, because he's going to argue at the lower end of this range." *Id.* at 6.

{¶ 6} When the prosecutor had described some additional details of the arrangement, the trial court turned to defense counsel and asked: "All right * * * * [I]s that your understanding?" *Id.* at 7. Defense counsel responded "Yeah." From his standpoint, the case was not winnable, he said. *Id.* Given the facts, "[t]he sole question presented to us was whether or not, in a single incident where we have in one room two separate bags of cocaine, would they merge or would they not. Was it a single incident or not?" *Id.* Tempted to say the trafficking counts merged, he corrected himself: "I will still argue that, for purposes of sentencing, as it is essentially one incident, one animus, that the right thing to do is to merge them at sentencing to get to the -- not merge, but run them concurrent, excuse me, to run them concurrent at sentencing and then to wind up in the range as agreed." *Id.* at 8. "Because, again, truthfully, Your Honor," defense counsel elaborated, "the State had Mr. Pagan, without question, guilty of at least the * * * possession of cocaine MDO with the fire[arm] specification, which would have got them to 12 years [in that case alone] without even trying." *Id.*

{¶ 7} The judge ascertained that Mr. Pagan was satisfied with his lawyer's representation, *id.* at 10, and had reviewed the plea forms with him, *id.* at 11. The judge also reviewed the potential three-year sentence that could result from (what had become) the weapon case, *id.* at 12, and while noting "some debate" as to whether the trafficking counts should merge, advised Mr. Pagan that "[i]f they don't merge, you could be looking at a maximum 22 years in prison" for that case, *id.* at 13. The judge also noted that "there is a joint recommendation in this [trafficking] case that we order a presentence investigation and that the parties will argue for a sentence between 10 to 18 years on this case * * * as well as the weapons under disability case." *Id.* at 16. Mr. Pagan acknowledged that the trial court was not bound by this recommendation. *Id.* Mr. Pagan waived his right to trial, a waiver that his lawyer, too, characterized as made "knowingly, voluntarily, and intelligently." *Id.* at 18-19.

{¶ 8} Asked for further facts, the prosecutor stated that "upon interviewing the [alleged] victim" in the kidnapping/felonious assault/gun case, the police had obtained "a warrant for Mr. Pagan's arrest; and two days later found him, after pinging his phone at a

hotel * * * * [T]aken out of the hotel room in two duffel bags were two separate quantities of cocaine. * * * * He also had a firearm * * * ." *Id.* at 20. The defense did not dispute those particular facts. *Id.* at 20-21. The trial court again confirmed that Mr. Pagan's pleas were made knowingly and voluntarily, accepted them, and found Mr. Pagan guilty of the three designated counts. *Id.* at 22-23.

{¶ 9} The parties returned to court roughly six weeks later for sentencing. The prosecutor reiterated that "[t]he parties have agreed [that the two trafficking in cocaine counts] do not merge, but they can run concurrent, which is how we got to 10 to 18 as our negotiated range that we're going to argue." March 13, 2019 Sentencing Tr. at 3 (saying, too, that time on the weapons case could run concurrently). The state argued for the higher end of the agreed range given the amounts of cocaine involved and because Mr. Pagan had gone to prison for having "shot somebody during a carjacking" and then committed these offenses within approximately 10 months of his release. *Id.* at 3-4.

{¶ 10} Defense counsel noted that Mr. Pagan had "provided a rather detailed confession," and had been doing the bidding of others. *Id.* at 6-7. "[B]y agreement," defense counsel continued, "we are not asking for anything under 10 years. The reason for that being is that what Christian admitted to was an MDO offense, and the minimum term that he could have received was 11 years on the case." But "[t]he two counts are not separate from one another. And by that, I mean everything that we're talking about was in one bag. It's just one large duffel bag separated into two smaller amounts. * * * * We do not have a separate animus there. Therefore, I do respectfully suggest that, based upon that, that concurrent sentencing on the two [trafficking counts, with the concurrent weapon under disability time] is the appropriate sentence." *Id.* at 7-8.

{¶ 11} For a variety of reasons as fully recited on the record, including that "the offender was under post-release control for a violent offense when this offense was committed," the trial court determined consecutive sentences to be necessary and appropriate. *Id.* at 12-13. The trial court sentenced Mr. Pagan to eight years in prison on each of the drug trafficking counts, with those sentences to run consecutively to each other but concurrently with prison time on the weapons case for a total sentence of 16 years in prison covering the two cases. *Id.* at 13-14; *see also* March 13, 2019 Judgment Entry. Referring to plea discussions with the state from two years earlier, defense counsel then

inquired: "initially we talked either this sentence or 15 on this case. Would the court be willing to go 15 on this instead of 16?" After brief discussion, the trial court confirmed that "given the maximum possibility that he was facing, I think this is a fair resolution." *Id.* at 15-16.

{¶ 12} Appealing his convictions and sentences in the drug case, Mr. Pagan mounts four assignments of error:

> [I.] Appellant's counsel amounted to ineffective assistance in violation of Appellant's Fourth, Fifth, and Sixth Amendment rights.
>
> [II.] The trial court erred when it failed to merge Appellant's allied offenses of similar import.
>
> [III.] Appellant was deprived of effective assistance when counsel failed to properly argue for merger of his convictions.
>
> [IV.] Appellant's plea was not knowing, voluntary, or intelligent.

Appellant's Brief at 9, 19, 26, 28 (capitalizations adjusted).

{¶ 13} Mr. Pagan's first assignment of error amounts to an argument that although he was *arrested* pursuant to a warrant (stemming from the charges in the kidnapping/felonious assault/gun case), he was *found* after police "pinged" his cell phone, and that his counsel therefore should have endeavored to suppress any evidence that derived from the circumstances of his arrest, based on a decision issued by the United States Supreme Court roughly a year and a half after that arrest (albeit seven months or so before his plea). *See* Appellant's Brief at 14-19, citing *Carpenter v. U.S.*, 138 S.Ct. 2206 (June 22, 2018); *id.* at 5-6 (Pagan's arrest was December 19, 2016). "But for this incompetence" in not pursuing a suppression motion under *Carpenter*, he assures us, "the entirety of the [gun and drug] evidence against Mr. Pagan * * * would have been suppressed," so this is said to be that relatively rare case in which constitutionally violative ineffectiveness of counsel can be established on direct appeal. *Id.* at 18 (also asserting without record citation that "Mr. Pagan was advised to take a plea deal"), 13-14 (acknowledging differences between direct and collateral review).

{¶ 14} We need not elaborate all the reasons this argument fails, but we briefly note some. First, as the state observes, this argument is (loosely) hinged on facts or suppositions

that are not sufficiently developed in the record. For example, we know from the plea hearing that Mr. Pagan's then-counsel thought the deal a good one under the circumstances, but we are not much apprised of the plea conversations between Mr. Pagan and his lawyer. And while Mr. Pagan's *Carpenter* argument is predicated on an assumption that the "pinging" of his cell phone to ascertain his whereabouts was done under pre-*Carpenter* protocols and without a warrant supported by probable cause, Mr. Pagan does not point us to any material in the record reflecting that or the nature of or basis provided for any order for pin-point location information.

{¶ 15} Perhaps more fundamentally still, *Carpenter* didn't involve suppression of evidence arising from an arrest at all, but dealt instead with a series of historical cell phone records providing "a comprehensive chronicle of the user's *past* movements." 138 S.Ct. at 2211 (emphasis added). While deeming a government order for such records to be a search, the decision explicitly noted that "exigencies includ[ing] the need to pursue a fleeing suspect, [or to] protect individuals who are threatened with imminent harm * * * * will likely justify the warrantless collection of" cell location data. *Id.* at 2223. In short, *Carpenter*, which announced a new interpretation that was not the prevailing understanding at the time of the arrest here, has very little to do with this case involving an arrest made pursuant to a warrant.

{¶ 16} At least as recited—without record citation—in Mr. Pagan's brief, "a warrant [had been] issued for Mr. Pagan's arrest" in the aftermath of the events alleged in the gun case. Appellant's Brief at 5. After they "pinged" his cell phone, police located Mr. Pagan at a hotel; "[w]hen Mr. Pagan opened the door, officers immediately arrested him" and observed a handgun in the room. *Id.* at 6. According to Mr. Pagan, the police secured the gun and "asked Mr. Pagan what he wanted to do with the property still in the room," which included a couple bags and a phone. Mr. Pagan, by his own account, "indicated he did not want it. Management then requested that the property be removed. [An] Officer * * * conducted a search of the bags and found what he believed to be packaged cocaine." *Id.* at 6-7. Suffice it to say that we do not read *Carpenter* even potentially to invalidate the results of the search into this arguably abandoned and subsequently inventoried property.

{¶ 17} In sum, while we are not made privy to conversations in this area between Mr. Pagan and his then-lawyer, defense counsel could not reasonably have advised Mr.

Pagan that a motion to suppress as based on *Carpenter* would assure success on the drug case. And Mr. Pagan's brief does not even attempt to argue that such a motion would have resulted in dismissal of the kidnapping/felonious assault/weapon under disability case that also was part of the plea package. *See* Appellant's Brief at 17 (asserting that a *Carpenter*-based motion "would have been granted" so that "the State would have been unable to move forward with their prosecution in Case Number 2016 CR 7225"). Mr. Pagan's then-counsel had filed a motion to suppress (not including the *Carpenter* theory) that was obviated by Mr. Pagan's plea of guilty. *See* May 15, 2018 Motion to Suppress in 16CR-7225. Although we do not rule on hypothetical motions not made and considered below, we find no reason to believe that inclusion of an argument built on *Carpenter* and a theory that police somehow should have averted their eyes from Mr. Pagan's presence rather than executing the arrest warrant once he was located would have altered the calculus that led to his convictions by plea.

{¶ 18} Mr. Pagan thus fails to satisfy either prong of his ineffective assistance of counsel claim on this score. He does not show that his then-counsel in abjuring a *Carpenter*-based argument somehow breached prevailing professional norms and thereby provided him unreasonable representation, and he does not establish that but for such claimed deficiency the result of the proceeding would have been different. "To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. The failure to make either showing is fatal to the claim. To demonstrate deficient performance, an accused must prove that counsel's performance fell below an objective level of reasonable representation. The accused must overcome the strong presumption that trial counsel's conduct falls within the wide range of reasonable professional assistance. To establish prejudice, an accused must demonstrate that a reasonable probability exists that but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Delgadillo-Banuelos*, 10th Dist. No. 18AP-729, 2019-Ohio-4174, ¶ 23-24, variously citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)), *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989) (quoting *Strickland* at 697), and *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204

(citing *Strickland* at 687-88).  In sum, Mr. Pagan does not show that his plea resulted from the ineffective assistance of counsel regarding suppression issues.

{¶ 19} Because Mr. Pagan does not establish ineffective assistance of counsel as premised on a *Carpenter* theory, we overrule his first assignment of error.

{¶ 20}   Mr. Pagan's second, third, and fourth assignments of error are built around his view that the court was required to merge the drug trafficking counts for sentencing, despite the parties' agreement to the contrary.  He argues that it was "plain error" for the court not to do so, *see* Appellant's Brief at 19-26, that it was ineffective assistance of counsel for his lawyer not to argue for such merger "at sentencing," *id.* at 27, and that the trial court's statement to Mr. Pagan during the plea colloquy that he could "be looking at a maximum 2[2] years in prison" were the counts not to merge was "demonstrably false" and thereby rendered Mr. Pagan's plea not intelligently made because merger was required, *id.* at 28-29.  Again, these arguments do not allow Mr. Pagan to overcome the plea agreement he entered into and that informed his sentence.

{¶ 21} Mr. Pagan's new argument here that the two trafficking counts had to merge—an argument he explicitly disclaimed at the trial court—has been waived.  Thus we need not explore whether it also has been forfeited because he did not raise it with the trial court, thereby forfeiting all but plain error on what was a relatively undeveloped factual record.  *Compare, e.g., State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 19-23 (citations omitted) (discussing "Waiver vs. Forfeiture" distinction; noting that "by failing to seek the merger of his convictions as allied offenses of similar import in the trial court, Rogers forfeited his allied offenses claim for appellate review" apart from discretion to correct for plain error; again " 'admonish[ing] courts to notice plain error "with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice" ' "; and observing, too, that "[w]e have never [to that point] recognized * * * forfeited error that is presumptively prejudicial and is reversible error per se," *but compare State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658).

{¶ 22}   The Supreme Court of Ohio has made clear that "[i]t is possible for an accused to expressly waive the protection afforded by R.C. 2941.25 [the merger statute, describing when multiple punishments may be imposed for two or more offenses], such as by 'stipulating in the plea agreement that the offenses were committed with separate

animus.' " *Rogers*, 2015-Ohio-2459 at ¶ 20, quoting *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 29. And this is not a case like *Williams*, where the trial court affirmatively concluded that the crimes at issue were allied offenses of similar import subject to merger but nonetheless then imposed multiple sentences. 2016-Ohio-7658 at ¶ 19.

{¶ 23} Here, Mr. Pagan waived any merger argument by stipulating in his plea agreement for the trafficking case that the "counts do not merge." That stipulation was emphasized during the plea proceedings. The prosecutor said, "we're agreeing that they don't merge," and defense counsel confirmed that understanding. Plea Tr. at 6-7; *see also id.* at 8 (explicitly noting that he would argue at sentencing *not* that the trafficking counts would merge, but that the sentences should run concurrently). Even at sentencing, Mr. Pagan's argument was not for merger, which had been waived through the plea, but for "concurrent sentencing." Sentencing Tr. at 8. And the import of the parties' agreement that the "counts do not merge" was underscored further by the agreed sentencing range within which they argued: the plea agreements in each of the two cases recited that the parties "agree to argue for a sentence between 10 and 18 years"—and given the reduction in counts achieved by the agreement, the upper end of that range would not have been possible to contemplate or impose were the trafficking counts to merge: the agreed range was workable only on the agreed view that the two trafficking counts would not merge.

{¶ 24} "[W]here the transcript demonstrates that the state and defense counsel agreed that offenses were not allied, the issue of allied offenses is waived." *State v. Black*, 8th Dist. No. 102586, 2016-Ohio-383, ¶ 18. Here, that agreement came not only through counsel, but also was incorporated into the actual plea agreement that Mr. Pagan himself signed, along with his counsel, in the drug trafficking case. And the transcript of the plea colloquy reflects that Mr. Pagan made his plea knowingly, voluntarily, and intelligently, and that he understood that the sentence as imposed by the court could exceed even the 18-year upper end of the sentencing range from which it was agreed that his counsel would argue. *See, e.g.*, Plea Tr. at 13.

{¶ 25} Mr. Pagan's sentence is authorized by law. Because analysis pursuant to R.C. 2953.08 here concludes with that assessment, the state's argument that further review under that section would be precluded by R.C. 2953.08(D)(1) is moot and there is no cause

for us to determine the applicability of that subsection to the circumstances of this case. *Compare* Appellee's Brief at 17-24.

{¶ 26} Next, contrary to Mr. Pagan's argument here, *see* Appellant's Brief at 28-29, the trial court was not required to apprise him during the plea colloquy of what the maximum prison term would be under the plea if (contrary to the terms of the plea agreement) the trafficking counts were to merge: not only was the plea predicated on the agreement that the "counts do not merge," but the trial court did not need to contemplate merger at the time of plea in any event. *See Rogers*, 2015-Ohio-2459 at ¶ 19 ("the merger of allied offenses occurs at sentencing, a *subsequent* stage of the proceedings"); *State v. Reed*, 8th Dist. No. 105862, 2018-Ohio-3040, ¶ 26 ("there is no requirement in Crim.R. 11 that the trial court must ensure a defendant understands the merger of offenses for purposes of sentencing before accepting his plea. Indeed, there is ' " no obligation under Crim.R. 11(C)(2) for the trial court to determine, at a plea hearing, whether the offenses at issue are allied offenses of similar import and to notify the defendant of the cumulative maximum penalty after merger." ' *State v. Carnahan,* 3d Dist. No. 4-15-18, 2016-Ohio-3213, ¶ 23, quoting *State v. Jefferson*, 2d Dist. No. 26022, 2014-Ohio-2555, ¶ 21").

{¶ 27} Finally, Mr. Pagan's argument that "[i]n the process of plea negotiations, nothing could [have been] more important" than the merger issue, and that therefore "this Court should find that defense counsel was prejudicially ineffective at sentencing," *see* Appellant's Brief at 27, again flounders on his inability to show either that his counsel was deficient or that absent such claimed deficiency, there was a reasonable probability that the outcome would have been different.

{¶ 28} In his three paragraph argument on this score, Mr. Pagan does not show that whatever counsel he received from his lawyer failed to constitute presumptively reasonable representation. *Id.* at 26-27. In addition to eliminating the MDO aspects and gun specifications of the drug charges and the weapons count in the drug case (which could have netted him between 12 to 15 years in that case alone, even assuming merger of all drug counts, *see* Plea Tr. at 8 acknowledging charges "would have got them to 12 years without even trying"), the plea agreement also ensured that he would not risk prosecution for the kidnapping/felonious assault charges in the other case (in which, at least at that particular juncture, the state was having trouble finding its complaining witness). In any event, Mr.

Pagan does not overcome the strong presumption that his lawyer's conduct fell within the wide range of reasonable professional assistance, just as he does not shed further light on the plea calculus.

{¶ 29} We overrule Mr. Pagan's second, third, and forth assignments of error.

{¶ 30} Having overruled all of the assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J. and LUPER SCUSTER, J., concur.

————————————