[Cite as *State v. Rice*, 2021-Ohio-1882.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 109712

    v.                               :

DEVAUGHNTE RICE,                        :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 3, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-636068-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Jeffrey M. Gamso, Assistant Public Defender, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Devaughnte Rice ("Rice"), appeals from his conviction for having weapons while under disability following a trial. He raises the following assignments of error for review:

1. Appellant was denied his right to due process and a fair trial when the court found him guilty of having weapons while under disability on insufficient evidence.

2. The court's verdict finding appellant guilty of having weapons while under disability was against the manifest weight of the evidence.

{¶ 2} After careful review of the record and relevant case law, we affirm Rice's conviction.

## I. Procedural and Factual History

{¶ 3} In January 2019, Rice and his codefendants, David Wagner ("Wagner") and Richard Pinson, Jr. ("Pinson"), were named in a 12-count indictment, charging them with aggravated murder in violation of R.C. 2903.01(B), (Count 1); attempted murder in violation of R.C. 2923.02 and R.C. 2903.02(A) (Count 2); felonious assault in violation of R.C. 2903.11(A)(2) (Count 3); felonious assault in violation of R.C. 2903.11(A)(1) (Count 4); murder in violation of R.C. 2903.02(B) (Count 5); aggravated robbery in violation of R.C. 2911.01(A)(1) (Count 6); robbery in violation of R.C. 2911.02(A)(1) (Count 7); kidnapping in violation of R.C. 2905.01(A)(2) (Count 8); grand theft in violation of R.C. 2913.02(A)(1) (Count 9); and having weapons while under disability in violation of R.C. 2923.13(A)(2) (Counts 10, 11, 12). Counts 1-9 carried a repeat violent offender specification and one-year, three-year, and 54-month firearm specifications. Count 10, which pertained to Rice individually, carried three-year and 54-month firearm specifications.

{¶ 4} In March 2020, Rice waived his right to a jury trial on the having weapons while under disability offense charged in Count 10 of the indictment, as

well as all repeat violent offender specifications and 54-month firearm specifications. The matter proceeded to a jury trial on the remaining offenses and the following facts were adduced.

{¶ 5} On September 5, 2018, Ronnal White ("White") shot and killed Deandre Wilson ("Wilson") in self-defense. Detective Kevin Fischbach (Det. Fischbach) of the Cleveland Police Department was assigned to investigate the shooting death of Wilson. Relevant to this appeal, the incident was captured by surveillance cameras located in the apartment complex. The video was played for the jury while Det. Fischbach identified persons of interest and described events as they occurred.

{¶ 6} The video shows that at approximately 10:00 p.m., two vehicles pulled into the apartment complex's parking lot and parked next to one another. Wagner, Wilson, and Rice exited the first vehicle, a 2015 Ford Fusion. Pinson and an unidentified male exited the second vehicle. The men stood near the parked vehicles and conversed with each other and unidentified individuals who passed through the parking lot.

{¶ 7} White arrived at the apartment complex at approximately 10:19 p.m. and parked his company van near an area where Wagner and Wilson were standing. White testified that when he exited his van, Wagner and Wilson began conversing with him about a variety of topics, including his employment with a television and internet company. During this conversation, Wilson made a hand gesture towards Rice at approximately 10:24 p.m. Rice, who was standing several feet away near the

Ford Fusion, walked over to Wilson and retrieved something from Wilson's hand, presumably car keys. Rice then walked back to the Ford Fusion and got into the driver's seat of the vehicle. Several seconds after entering the vehicle, Rice began to flash the vehicle's headlights, repeatedly, while Wagner and Wilson surrounded White. At approximately 10:25 p.m., Wagner grabbed White from behind and began pushing him towards the center of the parking lot. As this was occurring, Pinson reached into the driver's side window of the Ford Fusion, where Rice was sitting, and turned on the vehicle's headlights. The headlights illuminated the assault as it occurred in the middle of the parking lot.

{¶ 8} Ultimately, the struggle between White, Wagner, and Wilson caused the three men to fall into a grassy area that was located just in front of where White's van was parked. Consistent with White's testimony at trial, the video shows White being held down as Wagner and an unidentified male removed items from his person. The video also depicts Pinson and the unidentified male enter White's van. While the physical assault of White was occurring, Rice pulled the Ford Fusion forward and stopped the vehicle in a position facing the parking lot's exit.

{¶ 9} White testified that at some point during the incident, a Kahr Arms .40 Smith and Wesson caliber pistol fell out of his front pants pocket. White stated that Wagner immediately picked up the gun and began striking him with the weapon. White, however, was in possession of a second firearm, a Metro Arms .45 ACP Bobcut Model 1911 caliber pistol, which he used to shoot and kill Wilson in self-defense at approximately 10:28:06 p.m.

{¶ 10} After Wilson was shot, he ran towards the apartment complex for safety. At the same time, Wagner, Pinson, and the unidentified male fled to the vehicle Pinson had arrived in earlier that evening. The video footage showed Wagner return gunfire towards White as he ran towards Pinson's vehicle. During the exchange of gunfire, Rice began to flee the parking lot in the Ford Fusion. However, before he exited the parking lot, Rice suddenly put the Ford Fusion in reverse and drove backwards, towards Pinson's vehicle. Once Rice ensured that Wagner, Pinson, and the unidentified male were safely inside Pinson's vehicle, he fled the scene, alone, in the Ford Fusion at approximately 10:28 p.m. Pinson's vehicle immediately followed the Ford Fusion out of the parking lot.

{¶ 11} White, who had a concealed carry permit, called the police and remained at the scene. During the subsequent police investigation into the shooting, White identified Wagner and Pinson in a photo array as the two other individuals involved in his robbery. He did not identify Rice as a perpetrator.

{¶ 12} In the course of his investigation, Det. Fischbach also processed evidence from the crime scene. Det. Fischbach testified that there was a total of 16 spent shell casings and three bullet fragments recovered from three separate areas connected to the shooting, including (1) the area near White's van, (2) the area where Wilson retreated to and was treated by emergency medical personnel, and (3) a nearby cul-de-sac where additional shots were fired at White. In addition, the police recovered the .45 caliber handgun used by White during the altercation.

{¶ 13} Detective Mark Peoples ("Det. Peoples") of the Cleveland Police Department testified that he responded to the scene of the shooting. In the course of his investigation, Det. Peoples collected and photographed relevant evidence. Relevant to this appeal, Det. Peoples testified that he recovered two spent bullet fragments and four spent .380 cases near the van. Approximately ten feet or less away from the van, Det. Peoples recovered six spent .45 cases in a grassy area. Near the cul-de-sac area referred to by Det. Fischbach, Det. Peoples recovered three spent .40 cases and three spent .380 cases.

{¶ 14} Juelia Haywood ("Haywood") testified that on the day of the shooting, her boyfriend, Wilson, and his friends, Wagner, Pinson, and Rice were at the home she shared with Wilson. At some point, Wilson asked Haywood to borrow her Ford Fusion vehicle so that he and his friends could go to the liquor store. Haywood explained that it was not unusual for Wilson to use her vehicle. Haywood testified that she did not see Wilson again until she received a phone call notifying her that Wilson had been transported to a hospital as a result of his gunshot injuries. Haywood testified that her Ford Fusion was later retrieved from an unknown location by her brother's girlfriend. Upon examination of her vehicle, Haywood discovered three guns inside the trunk. Haywood testified that she did not touch the guns and immediately contacted the police. Her vehicle and the discovered guns were confiscated by the police for further examination. One of the three firearms recovered from the trunk of the Ford Fusion was the .40 caliber firearm taken from White during the robbery. (Tr. 931.) Subsequent forensic testing also confirmed

that Rice's DNA matched a profile taken from a swab of the rear passenger door panel of Haywood's vehicle. (Tr. 842-843.)

{¶ 15} Ballistics expert, James Kooser ("Kooser"), testified that in preparation for trial he tested various items recovered during the course of the investigation in this case. Kooser confirmed that the Metro Arms .45 caliber handgun recovered from White after the shooting was operable. In addition, Kooser confirmed the operability of the three guns recovered from the trunk of Haywood's vehicle — a Ruger .45 ACP caliber pistol, a Cobra .380 ACP caliber pistol, and a Kahr Arms .40 Smith & Wesson caliber pistol. (Tr. 567-571.) Kooser testified that he also tested various spent casings recovered at the scene. He confirmed that four of the spent .380 caliber casings were fired from the recovered Cobra .380 caliber handgun. (Tr. 578-582.) He also confirmed that three spent .40 caliber cases were fired from the recovered Kahr Arms .40 caliber handgun and that six spent .45 caliber cases were fired by the Metro Arms .45 caliber handgun. (Tr. 582, 584.)

{¶ 16} Following Rice's arrest, he placed a phone call to his mother, Demarlah Perkins ("Perkins"), from inside jail on the day his trial was scheduled to begin. During this phone call, Rice informed Perkins that "nobody jumped into the car he was in." (Tr. 744.) During a later portion of the phone call, which was recorded and played for the jury, Rice explained to Perkins that White could not identify him and that Wagner and Pinson had fled the scene in a different vehicle than the one he was sitting inside during the incident.

**{¶ 17}** At the conclusion of trial, the trial court dismissed Count 1, aggravated murder, pursuant to Crim.R. 29. Thereafter, the jury found Rice not guilty of Counts 2-9 and their accompanying specifications. The trial court, however, found Rice guilty of having weapons while under disability, as charged in Count 10 of the indictment, and the accompanying firearm specifications. In rendering its verdict, the trial court acknowledged Rice's jailhouse phone call to his mother, during which Rice placed himself at the scene of the robbery. At sentencing, the trial court imposed an aggregate 85-month prison term.

**{¶ 18}** Rice now appeals from his conviction.

## II. Law and Analysis

### A. Sufficiency of the Evidence

**{¶ 19}** In his first assignment of error, Rice argues his conviction for having weapons while under disability was not supported by sufficient evidence. Rice contends that while there were guns discovered inside the trunk of the vehicle he had driven, "there is no evidence indicating that he put them there, that they were put there while he was in possession of the car, or that he knew they were there."

**{¶ 20}** "[T]he test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991),

paragraph two of the syllabus. The state may use direct evidence, circumstantial evidence, or both, in order to establish the elements of a crime. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32.

{¶ 21} In this case, Rice was convicted of having weapons while under disability in violation of R.C. 2923.13(A)(2). The statute provides, in relevant part:

> [u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

R.C. 2923.13(A)(2).

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶ 22} On appeal, Rice does not dispute that he was under disability based on his prior convictions for robbery and felonious assault in Cuyahoga C.P. No. CR-14-587937-C. Rather, Rice asserts that his having weapons while under disability conviction must be reversed because he was merely present at the scene of the

shooting, and did not knowingly acquire, have, or use any of the firearms that were eventually discovered inside the Ford Fusion.

{¶ 23} To "have" a firearm within the meaning of R.C. 2923.13(A), a person must have actual or constructive possession of it. *State v. Davis*, 8th Dist. Cuyahoga No. 104221, 2016-Ohio-7964, ¶ 13, citing *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478, ¶ 19.

{¶ 24} Actual possession is ownership or physical control. *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 46. In contrast, constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his or her immediate physical possession. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976); *State v. Washington*, 8th Dist. Cuyahoga Nos. 98882 and 98883, 2013-Ohio-2904, ¶ 22. "[C]ircumstantial evidence is sufficient to support the element of constructive possession." *State v. Brooks*, 8th Dist. Cuyahoga No. 94978, 2011-Ohio-1679, ¶ 17. Thus,

> if the evidence demonstrates that the defendant was in close proximity to the contraband, such that the defendant was able to exercise dominion or control over the contraband, this constitutes circumstantial evidence that the defendant was in constructive possession of the items.

*State v. Walker*, 8th Dist. Cuyahoga No. 106378, 2018-Ohio-3588, ¶ 9, quoting *Brooks* at *id*. Furthermore, a person may knowingly possess or control property belonging to another; the state need not establish ownership to prove constructive

possession. *See State v. Robinson*, 8th Dist. Cuyahoga No. 90751, 2008-Ohio-5580, ¶ 84.

{¶ 25} However, "[c]onstructive possession cannot be inferred by a person's mere presence in the vicinity of contraband" or "mere access" to contraband or to the area in which contraband is found. *State v. Jansen*, 8th Dist. Cuyahoga No. 73940, 1999 Ohio App. LEXIS 2060, 8 (May 6, 1999); *State v. Burney*, 10th Dist. Franklin No. 11AP-1036, 2012-Ohio-3974, ¶ 22-24, 32, quoting *State v. Hall*, 8th Dist. Cuyahoga No. 66206, 1994 Ohio App. LEXIS 5391, 5 (Dec. 1, 1994). It must be shown that the person was "conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982); *Washington* at ¶ 22; *State v. Bray*, 8th Dist. Cuyahoga No. 92619, 2009-Ohio-6461, ¶ 21.

{¶ 26} In this case, the state did not present any evidence of actual possession. Rather, the state alleged that Rice aided and abetted his codefendants in the offenses committed against White and, therefore, constructively possessed a firearm within the meaning of R.C. 2923.13(A)(3).

{¶ 27} Ohio's complicity statute provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). Under R.C. 2923.03(F), a person who is guilty of complicity in the commission of an offense "shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated * * * in terms of the principal offense."

**{¶ 28}** In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense. *State v. Sims*, 10 Ohio App.3d 56, 460 N.E.2d 672 (8th Dist.1983). A person aids or abets another when he supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal. *State v. Johnson*, 93 Ohio St.3d 240, 245-246, 754 N.E.2d 796 (2001). "Such intent may be inferred from the circumstances surrounding the crime." *Id.* at 246.

**{¶ 29}** Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981), citing *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971). Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *Id.* at 150. *See also State v. Trocodaro*, 36 Ohio App.2d 1, 301 N.E.2d 898 (10th Dist.1973). However, "[t]he mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982). "Mere association with the principal offender * * * is [also] insufficient to establish complicity." *State v. Hoston*, 8th Dist. Cuyahoga No. 102730, 2015-Ohio-5422, ¶ 13, citing *State v. Doumbas*, 8th Dist. Cuyahoga No. 100777, 2015-Ohio-3026.

**{¶ 30}** Consistent with the state's theory at trial, this court has recognized that an unarmed accomplice can be convicted of an underlying felony, along with a

firearm specification, based on an aider and abettor status. *State v. Howard*, 8th Dist. Cuyahoga No. 97695, 2012-Ohio-3459, ¶ 24; *State v. Chapman*, 21 Ohio St.3d 41, 487 N.E.2d 566 (1986). The same principle applies to a conviction for having weapons while under disability in violation of R.C. 2923.13(A)(2). Thus, a defendant can be convicted of having a weapon while under disability without holding the firearm if that person was an accomplice who aided and abetted the person who actually possessed and brandished the weapon. *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478, ¶ 16 (finding that the defendant "constructively" possessed the weapon where there was an accomplice relationship between the physical possessor and the accomplice); *State v. Lewis*, 8th Dist. Cuyahoga No. 81957, 2003-Ohio-3673 (evidence sufficient to prove having a weapon while under disability when only codefendant pointed the gun at victims during robbery); *State v. Reed*, 8th Dist. Cuyahoga No. 93346, 2010-Ohio-1866 (conviction for having a weapon while under disability upheld despite defendant not being the shooter, but being an active participant in the crimes).

{¶ 31} In this case, there is no dispute that Wagner possessed a firearm during the commission of the crime against White. The surveillance footage captured Wagner firing a handgun during the altercation with White. Additionally, the ballistics evidence established that in addition to White's .45 and .40 caliber handguns, a third gun, which was transported to the scene and later found in Haywood's vehicle, was used during the shooting. Thus, regardless of whether the state failed to demonstrate that Rice was present at the time firearms were placed in

the trunk of Haywood's Ford Fusion at some time after the shooting, we find the determination of whether Rice aided and abetted the codefendants during the commission of the underlying crimes is dispositive of Rice's sufficiency arguments.

{¶ 32} With respect to Rice's culpability, the record reflects that Rice shared a companionship with Wilson and the codefendants. Haywood confirmed that Rice was present at Wilson's home prior to the incident. In addition, forensic testing and Rice's jail-house phone calls with his mother established that Rice did, in fact, arrive at the scene of the shooting in the vehicle Wilson had borrowed from Haywood. While at the scene, Rice and his friends mingled with one another until White arrived at the apartment complex in his company van. Following a lengthy discussion between White, Wilson, and Wagner, surveillance footage showed Wilson make a hand gesture towards Rice. In response, Rice walked over to Wilson, took something from his hand, and then immediately went into the driver's seat of the Ford Fusion and started the vehicle. Less than one minute later, Rice began flashing the headlights of the vehicle repeatedly. It was at this point that Wagner and Wilson circled White and initiated the physical attack. When the conduct against White escalated, Rice did not leave the scene. Rather, he positioned the vehicle in such a way that Wagner and Wilson could quickly get into the vehicle and exit the parking lot. And although the circumstances of the shooting caused Wagner and Pinson to flee towards the vehicle Pinson had driven to the scene, the video footage shows that Rice did not immediately flee upon hearing gunshots. In fact, Rice waited until his companions were safely inside Pinson's vehicle before escorting

them out of the parking lot. The guns used during the shooting were later recovered from inside the trunk of the vehicle Rice had fled the scene inside.

{¶ 33} Viewing this evidence in a light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. From the evidence presented, the court could reasonably conclude that Rice participated in the crimes at issue and shared criminal intent in light of his actions before, during, and after the shooting. Because Rice was under a disability and aided and abetted his codefendants in the commission of the underlying offenses with a firearm, we find that the state presented sufficient evidence of constructive possession to support Rice's conviction for having a weapon while under disability.

{¶ 34} Finally, to the extent Rice contends that the trial court's verdict was inconsistent with the jury's determination that he was not complicit in the commission of the underlying offenses, this court has recognized that

> [c]onsistency between verdicts on several counts of a criminal indictment is unnecessary, and where the defendant is convicted on one or some counts and acquitted on others the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal.

*State v. Callahan*, 8th Dist. Cuyahoga No. 106445, 2018-Ohio-3590, ¶ 28, quoting *State v. Eason*, 2016-Ohio-5516, 69 N.E.3d 1202, ¶ 67 (8th Dist.). "Each count of a multi-count indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a verdict of guilt." *Eason* at ¶ 68. Accordingly, we find that the inconsistency between the jury's

and the trial court's verdicts does not require reversal of Rice's conviction for having weapons while under disability. *See State v. Brown*, 8th Dist. Cuyahoga No. 89754, 2008-Ohio-1722 (rejecting argument that conviction on bench-tried weapon under disability count was overridden by jury verdicts of not guilty on attempted murder and felonious assault); *State v. Douthitt*, 10th Dist. Franklin No. 18AP-547, 2019-Ohio-2528, ¶ 10 ("[Defendant]'s contention that the jury verdicts of acquittal precluded his conviction for having a weapon while under disability is not well-taken."); *State v. Smith*, 10th Dist. Franklin No. 14AP-33, 2014-Ohio-5443, ¶ 27 (affirming trial court judgment of guilt on weapon count despite jury verdicts of not guilty on aggravated burglary, aggravated robbery, and kidnapping); *State v. Webb*, 10th Dist. Franklin No. 10AP-289, 2010-Ohio-6122 (rejecting defendant's double jeopardy/collateral estoppel arguments that jury's inability to reach verdict on improper handling count was inconsistent with trial court's rendering of guilty verdict on charge of having a weapon while under disability); *State v. Page*, 10th Dist. Franklin No. 11AP-466, 2012-Ohio-671 (affirming trial court's conviction finding defendant guilty of having a weapon while under disability despite the jury's verdict finding him not guilty of aggravated robbery, attempted murder, and felonious assault).

{¶ 35} Rice's first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 36} In his second assignment of error, Rice argues his conviction is against the manifest weight of the evidence. Rice reiterates that the jury rejected the state's

theory that he was complicit in the underlying crimes committed by his codefendants. He further contends that the state failed to present any evidence to establish when and how the guns recovered from Haywood's vehicle were placed inside the trunk. Thus, he maintains that the record is devoid of credible evidence to suggest he actually or constructively possessed a firearm.

{¶ 37} A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

{¶ 38} Based on the record before this court, we cannot say that in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. As stated, the trial court had the benefit of reviewing the surveillance footage and was not bound by the jury's resolution of Counts 2-9. Having weighed the surveillance footage and the corroborating testimonial and physical evidence

presented by the state, we find Rice's conviction for having weapons while under disability was not against the manifest weight of the evidence. Collectively, the evidence demonstrated Rice's disability and his participation or assistance in the commission of crimes that involved the use of a firearm.

{¶ 39} Rice's second assignment of error is overruled.

{¶ 40} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
EMANUELLA D. GROVES, J., CONCUR