[Cite as *State v. Wagner*, 2021-Ohio-3107.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 109678 |
| v. | : | |
| DAVID WAGNER, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  September 9, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-636068-B

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Robert A. Dixon, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant David Wagner ("Wagner") appeals the imposition of consecutive sentences totaling fifteen years. For the reasons that follow, we affirm.

**Procedural and Factual History**

{¶ 2} Wagner was indicted in January 2019, along with two codefendants, Devaughnte Rice ("Rice") and Richard Pinson, Jr. ("Pinson") for an incident that occurred on September 5, 2018, that led to the death of the defendants' accomplice, Deandre Wilson ("Wilson"). Wagner was charged with aggravated murder (Count 1); attempted murder (Count 2); felonious assault (Count 3); felonious assault (Count 4); murder (Count 5); aggravated robbery (Count 6); robbery (Count 7); kidnapping (Count 8); grand theft (Count 9); and having weapons while under a disability (Count 11). Counts 1 through 9 each carried a repeat violent offender ("RVO") specification and one- and three-year firearms specifications. Count 11 carried a three-year firearm specification.

{¶ 3} The operative facts leading to the above indictment and relative to this appeal were sufficiently laid out in codefendant Rice's separate appeal. *State v. Rice*, 8th Dist. Cuyahoga No. 109712, 2021-Ohio-1882. To provide context and consistency, we recount the relevant portion as follows:

> On September 5, 2018, Ronnal White ("White") shot and killed Deandre Wilson ("Wilson") in self-defense. Detective Kevin Fischbach ("Det. Fischbach") of the Cleveland Police Department was assigned to investigate the shooting death of Wilson. Relevant to this appeal, the incident was captured by surveillance cameras located in the apartment complex. The video was played for the jury while Det. Fischbach identified persons of interest and described events as they occurred.
>
> The video shows that at approximately 10:00 p.m., two vehicles pulled into the apartment complex's parking lot and parked next to one another. Wagner, Wilson, and Rice exited the first vehicle, a 2015 Ford Fusion. Pinson and an unidentified male exited the second vehicle. The

men stood near the parked vehicles and conversed with each other and unidentified individuals who passed through the parking lot.

White arrived at the apartment complex at approximately 10:19 p.m. and parked his company van near an area where Wagner and Wilson were standing. White testified that when he exited his van, Wagner and Wilson began conversing with him about a variety of topics, including his employment with a television and internet company. During this conversation, Wilson made a hand gesture towards Rice at approximately 10:24 p.m. Rice, who was standing several feet away near the Ford Fusion, walked over to Wilson and retrieved something from Wilson's hand, presumably car keys. Rice then walked back to the Ford Fusion and got into the driver's seat of the vehicle. Several seconds after entering the vehicle, Rice began to flash the vehicle's headlights, repeatedly, while Wagner and Wilson surrounded White. At approximately 10:25 p.m., Wagner grabbed White from behind and began pushing him towards the center of the parking lot. As this was occurring, Pinson reached into the driver's side window of the Ford Fusion, where Rice was sitting, and turned on the vehicle's headlights. The headlights illuminated the assault as it occurred in the middle of the parking lot.

Ultimately, the struggle between White, Wagner, and Wilson caused the three men to fall into a grassy area that was located just in front of where White's van was parked. Consistent with White's testimony at trial, the video shows White being held down as Wagner and an unidentified male removed items from his person. The video also depicts Pinson and the unidentified male enter White's van. While the physical assault of White was occurring, Rice pulled the Ford Fusion forward and stopped the vehicle in a position facing the parking lot's exit.

White testified that at some point during the incident, a Kahr Arms .40 Smith and Wesson caliber pistol fell out of his front pants pocket. White stated that Wagner immediately picked up the gun and began striking him with the weapon. White, however, was in possession of a second firearm, a Metro Arms .45 ACP Bobcut Model 1911 caliber pistol, which he used to shoot and kill Wilson in self-defense at approximately 10:28:06 p.m.

After Wilson was shot, he ran towards the apartment complex for safety. At the same time, Wagner, Pinson, and the unidentified male fled to the vehicle Pinson had arrived in earlier that evening. The video footage showed Wagner return gunfire towards White as he ran

towards Pinson's vehicle. During the exchange of gunfire, Rice began to flee the parking lot in the Ford Fusion. However, before he exited the parking lot, Rice suddenly put the Ford Fusion in reverse and drove backwards, towards Pinson's vehicle. Once Rice ensured that Wagner, Pinson, and the unidentified male were safely inside Pinson's vehicle, he fled the scene, alone, in the Ford Fusion at approximately 10:28 p.m. Pinson's vehicle immediately followed the Ford Fusion out of the parking lot.

White, who had a concealed carry permit, called the police and remained at the scene. During the subsequent police investigation into the shooting, White identified Wagner and Pinson in a photo array as the two other individuals involved in his robbery * * *.

In the course of his investigation, Det. Fischbach also processed evidence from the crime scene. Det. Fischbach testified that there was a total of 16 spent shell casings and three bullet fragments recovered from three separate areas connected to the shooting, including (1) the area near White's van, (2) the area where Wilson retreated to and was treated by emergency medical personnel, and (3) a nearby cul-de-sac where additional shots were fired at White. In addition, the police recovered the .45 caliber handgun used by White during the altercation.

Detective Mark Peoples ("Det. Peoples") of the Cleveland Police Department testified that he responded to the scene of the shooting. In the course of his investigation, Det. Peoples collected and photographed relevant evidence * * * Det. Peoples testified that he recovered two spent bullet fragments and four spent .380 cases near the van. Approximately ten feet or less away from the van, Det. Peoples recovered six spent .45 cases in a grassy area. Near the cul-de-sac area referred to by Det. Fischbach, Det. Peoples recovered three spent .40 cases and three spent .380 cases.

*Rice* at ¶ 5-13.

{¶ 4} Wagner was in custody during the pendency of his case. In April 2019, the trial court conducted a pretrial, at which time, of primary concern to the trial court were reports that Wagner was on "suicide watch" after attempting suicide four times while in the county jail. The trial court had not been notified of these events

and was concerned about Wagner's condition and treatment in the county jail. After hearing from Wagner and his counsel, the trial court vowed to look into the situation and determine next steps. Counsel for Wagner requested a competency evaluation and an evaluation of Wagner's present sanity, which the trial court granted. A later journal entry reflects that the parties stipulated to the competency evaluation.[1]

{¶ 5} After several additional pretrials, Wagner entered a negotiated plea of guilty to the following: Count 1, amended to involuntary manslaughter, with a three-year firearm specification and a RVO specification; Count 2, attempted murder with an RVO specification; Count 6, aggravated robbery with an RVO specification; Count 8, kidnapping with an RVO specification; Count 9, grand theft; and Count 11, having a weapon while under a disability. Wagner's sentencing was continued until May 2020.

{¶ 6} On March 16, 2020, the trial court advanced the case for sentencing noting that the jail reported that Wagner's behavior had "deteriorated significantly,"[2] and the trial court felt it was necessary to sentence him immediately due to his behavior. Wagner raised no objection to being sentenced at that time.

{¶ 7} After hearing statements from counsel for Wagner, the state, and Wagner himself, the trial court detailed its findings of fact and proceeded to sentence Wagner to three years on Count 1, involuntary manslaughter, consecutive

---

[1] The record before us does not include the competency evaluation. As Wagner has not raised competency as an issue, we simply note the stipulation with no further speculation.

[2] Neither the court or counsel elaborated on the nature of the behavior, and we again decline to speculate.

to three years on the firearm specification; nine years on Count 2, attempted murder; nine years on Count 6, aggravated robbery; nine years on Count 8, kidnapping; 12 months on Count 9, grand theft, and 24 months on Count 11, having weapons while under a disability. The court ordered that Counts 1 and 6 be served consecutive to one another and that the remaining counts, Counts 2, 8, 9, and 11, run concurrent to each other and concurrent to the sentences in Counts 1 and 6 for a total sentence of 15 years.

{¶ 8} Wagner now appeals and assigns the following error for our review:

### Assignment of Error

The record below does not support imposition of consecutive sentences and is therefore contrary to law and subject to relief based upon *State v. Jones,* 2018-Ohio-498 (*En Banc*).

{¶ 9} In his sole assignment of error, Wagner argues that the trial court did not fully comply with the statutory requirements to support consecutive sentences and that the record did not support the imposition of consecutive sentences.

[T]here are two ways a defendant can challenge consecutive sentences. *State v. Hicks*, 8th Dist. Cuyahoga No. 107055, 2019-Ohio-870, ¶ 10:

First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *Id.,* citing *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 7; R.C. 2953.08(G)(2)(b); *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). Second, the defendant can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *Id.*; R.C. 2953.08(G)(2)(a). *Nia* at ¶ 16.

{¶ 10} Here, Wagner argues that the trial court failed on both grounds.

{¶ 11} R.C. 2953.08(G)(2) governs our review. Under R.C. 2953.08(G)(2) our role is not to determine whether the trial court abused its discretion. R.C.

2953.08(G)(2); *State v. Stoker*, 8th Dist. Cuyahoga No. 110029, 2021-Ohio-1887, ¶ 19. Rather, we must look to the record and if we "clearly and convincingly" find that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]" or that (2) "the sentence is otherwise contrary to law," we "may increase, reduce, or otherwise modify a sentence * * * " or in the alternative we may "vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.*

{¶ 12} In order to impose consecutive sentences,

"a trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and (3) that at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*State v. Scott*, 8th Dist. Cuyahoga No. 100085, 2021-Ohio-1823, ¶ 17.

{¶ 13} The findings in support of consecutive sentences must be made at the sentencing hearing and must be incorporated into the trial court's sentencing entry.

*Id.*, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "'[T]he [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *Id.* at *id.* at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). Additionally, the court also made clear that a "word-for-word recitation" of the statutory language is not required. *Bonnell* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 14} In the instant case, Wagner argues that the trial court failed to find that consecutive sentences were not disproportionate to the seriousness of his conduct and the danger he posed to the public. Wagner reached this conclusion because during his sentencing the trial court stated, "[w]hile concurrent sentences are presumed, the court can impose a consecutive term at its discretion if it is necessary to protect and/or punish and it is not disproportionate." We disagree with Wagner's assertions.

{¶ 15} In *State v. Morris*, 8th Dist. Cuyahoga No. 104013, 2016-Ohio-7614, ¶ 30, this court has "repeatedly rejected" similar arguments. In *Morris,* the defendant argued that the trial court did not comply with R.C. 2929.14(C)(4) where it stated the word "disproportionate" but did not specifically state that consecutive sentences would not be disproportionate to the seriousness of his conduct nor that consecutive sentences would not be disproportionate to the danger Morris posed to

the public. *Id.* at ¶ 29. After examining the entire record, this court found that the trial court had done the proper analysis despite not having used the exact phrasing of the statute. *Id.* at ¶ 34. In coming to this conclusion, the *Morris* Court pointed to a number of our prior decisions with similar holdings. *Id.* at ¶ 30-32. *See State v. Crawley*, 8th Dist. Cuyahoga No. 102781, 2015-Ohio-5150; *State v. Amey*, 8th Dist. Cuyahoga Nos. 103000 and 103001, 2016-Ohio-1121; *State v. Kirkman*, 8th Dist. Cuyahoga No. 103683, 2016-Ohio-5326.

{¶ 16} The record before us reflects that the trial court engaged in the necessary analysis and made the required findings for the imposition of consecutive sentences. The trial court noted the sentence "should be commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim and consistent with sentences for similar crimes with similar offenders." In explaining why consecutive sentences were warranted in this case, the trial court found that the crime was committed while Wagner was on federal parole. During the sentencing hearing, Wagner's counsel disclosed that he was on federal parole and that Wagner faced a potential three-year term due to his involvement in this case. While not a specific factor listed in R.C. 2929.14(C)(4), Wagner's engagement in criminal activity while under supervision of a parole authority goes to the seriousness of his conduct and the danger he poses to the public. The trial court further found that Wagner's crimes were "so great or so unusual that a single term does not adequately reflect the seriousness of his conduct." R.C. 2929.14(C)(4)(b).

Finally, the trial court found that Wagner's previous criminal history warranted consecutive sentences to protect the public.  R.C. 2929.14(C)(4)(c).

{¶ 17} We find that the trial court made the requisite findings to impose consecutive sentences under R.C. 2929.14(C)(4).  Looking at the record in its entirety and examining the trial court's statements as a whole, we can discern that the trial court engaged in the proper analysis and weighed the appropriate factors in imposing the sentence.  As such, we find this assertion without merit.

{¶ 18} Wagner also challenges his sentence, arguing that the trial court's findings were not supported by evidence in the record.  Again, we disagree.

{¶ 19} After listening to arguments of counsel and hearing Wagner's statement, the trial court outlined its responsibilities under the law and then outlined facts and findings on the record.  The court noted the serious physical, psychological, and economic harm the victim suffered as a result of Wagner's crime.  The court detailed White's injuries, his nightmares after realizing he took another person's life and his inability to continue working for the cable company due to his inability to trust people, to be out and about or be in dark places.  The court found that Wagner's actions displayed a complete disregard for any human life, specifically the victim, but also that of himself and his deceased friend and accomplice, Wilson.  The court described the video evidence, specifically, Wagner taking the victim to the ground, kicking him in the head and pinning him there while threatening to shoot him.  Further, although Wagner asserts here that the trial court did not have a presentence report and did not know Wagner's record, the record reflects that the

trial court had his criminal history before it and further, the trial court read it into the record, and sought confirmation from Wagner's counsel as to its accuracy.

{¶ 20} The trial court found that there were no factors that mitigated Wagner's conduct, and no factors that made Wagner's crimes less serious than similar crimes. The court also found factors indicating the likelihood of recidivism were high, noting that this incident occurred while he was on federal parole.

{¶ 21} Finally, Wagner argues that the trial court was required to link specific facts to its findings in order to justify the imposition of consecutive sentencing. We disagree.

{¶ 22} "This court has repeatedly held that although the trial court must make the findings required by R.C. 2929.14(C)(4), the court has no obligation to state the reasons to support its findings." *Crawley*, 8th Dist. Cuyahoga No. 102781, 2015-Ohio-5150, at ¶ 13.

{¶ 23} In the instant case, the trial court mentioned a number of factors to support its decision, and while the court did not delineate which factor supported which finding, we are capable of discerning that the trial court made the appropriate findings and that the record supported those findings. Wagner's reliance on our decision in *State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702 (8th Dist.), is misplaced. The Supreme Court overruled that decision in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, finding we were in error. Therefore, in order to overturn Wagner's sentence under R.C. 2953.08(G)(2), we must determine by clear

and convincing evidence whether the trial court's findings are unsupported by the record.

{¶ 24} Following a thorough review of the record, we find the trial court's imposition of a consecutive sentence was not contrary to law pursuant to R.C. 2929.14(C)(4).

{¶ 25} Accordingly, we overrule the sole assignment of error.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LARRY A. JONES, SR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR