[Cite as *State v. Knight*, 2021-Ohio-3674.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                                   No. 109302

    v.                           :

LANCE KNIGHT,                            :

    Defendant-Appellant.         :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 14, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622392-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jennifer Driscoll, Assistant Prosecuting Attorney, *for appellee.*

Timothy F. Sweeney, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant Lance Knight ("Knight") appeals his convictions following guilty pleas to numerous sexual offenses. For the reasons set forth below, we affirm Knight's convictions.

## Procedural and Factual History

{¶ 2} On October 13, 2017, Cleveland Police arrested Knight based on allegations that Knight raped his two stepdaughters ("Victim 1 and Victim 2"). The allegations surfaced after Victim 2, then 17 years old, ran away from home and revealed to a relative that Knight had been raping her since she was 12 years old, in the home, generally when her mother was away at work. It was later revealed that the rapes resulted in Knight fathering Victim 2's infant daughter. On that same day, after learning of Victim 2's revelation, Victim 1, then in her early 20's, disclosed that Knight had also raped her, for a period of years, beginning at age 15. In addition, Victim 1 alleged that Knight raped her in the home when her mother was away at work.

{¶ 3} On November 6, 2017, a grand jury returned a 23-count indictment against Knight. The charges were comprised of seven counts of rape, two counts of gross sexual imposition, six counts of kidnapping, six counts of endangering children, and two counts of sexual battery. Sexually violent predator specification and sexual motivation specification were attached to each count. At his arraignment, on November 9, 2017, Knight pleaded not guilty to the above charges.

{¶ 4} The trial court referred Knight, who is diagnosed with schizoaffective disorder and depression, to the psychiatric clinic for competency and sanity evaluations. The examination revealed that Knight was being prescribed the antipsychotic medication Abilify but had been prescribed Latuda previously. The examination also revealed that Knight was being prescribed Celexa for depression

and Lithium as a mood stabilizer. The examiner concluded that although Knight had a provisional diagnosis of unspecified schizophrenia spectrum or objective, he could understand the nature and objective of the proceedings against him, and that Knight was capable of adequately assisting in his defense. In addition, the examiner opined that Knight knew the wrongfulness of the charged conduct.

{¶ 5} On April 25, 2018, Knight appeared for a change of plea. The parties advised the trial court that they had arrived at an agreement, whereby Knight would plead guilty to six counts of felony-one rape and three counts of kidnapping. Pursuant to the agreement, the sexually violent predator specification would be deleted, and Knight would be a Tier III sexual registrant.

{¶ 6} The trial court inquired whether defense counsel and the state had reviewed the sanity and competency evaluation. Both the defense counsel and the state indicated they had reviewed the reports, and both stipulated to the findings that Knight was competent to stand trial, to enter a plea, and was sane at the time of the offense. In addition, defense counsel indicated that he had reviewed the reports with Knight, who understood what he was doing and would be making an informed decision in entering the pleas.

{¶ 7} The trial court proceeded to inform Knight of his constitutional rights that he would be waiving by pleading guilty, detailed the nature of the charges, effect of the plea, and the maximum penalties that could be imposed. Knight indicated he understood and subsequently entered guilty pleas in accordance with the plea agreement. After Knight entered the guilty pleas, defense counsel requested that

the trial court again refer Knight to the psychiatric clinic for the purpose of preparing a mitigation report. Defense counsel indicated that Knight's condition had deteriorated, that he had lost 58 pounds, that he was hearing voices, and seeing ghosts. The trial court granted defense counsel's request and referred Knight back to the psychiatric clinic.

{¶ 8} On June 20, 2018, the trial court sentenced Knight to 10 years each on five of the six rape counts and 11 years on the sixth for a total of 61 years. The trial court also sentenced Knight to five years each on two of the three kidnapping counts and 11 years on the third for a total of 21 years. In addition, the trial court ordered Knight to serve the sentences consecutively for a total prison term of 82 years.

{¶ 9} On December 19, 2019, we granted Knight's motion to file a delayed appeal and to appoint appellate counsel. On March 16, 2020, Knight's appointed appellate counsel motioned this court to be allowed to withdraw and file an *Anders* brief. We granted the motion to withdraw but appointed new appellate counsel because we found at least one issue of arguable merit.

{¶ 10} In this delayed appeal, Knight assigns the following five errors for review:

### Assignment of Error No.1
Knight's guilty plea was not made knowingly, voluntarily, and intelligently, and, as a result, the trial court's acceptance of that plea was in violation of Knight's constitutional rights and Criminal Rule 11.

### Assignment of Error No. 2
Knight's convictions for rape and kidnapping, in Counts 1 & 3, 5 & 8, and 20 & 22, should have been merged, respectively, into a single conviction on only one of the offenses, to be selected by the State. The

trial court's failure to do so violated Ohio merger law, Knight's right to due process, and his double-jeopardy protection against cumulative punishment for the same offense.

### Assignment of Error No. 3

Knight's trial counsel was ineffective for not objecting to the trial court's failure to merge the rape and kidnapping offenses, in Counts 1 & 3, 5 & 8, and 20 & 22, into, respectively, a single conviction on only one of the offenses to be selected by the State.

### Assignment of Error No. 4

Knight's sentence of 82 years in prison — when he was at all times pertinent to the subject offenses suffering with a disabling and serious mental illness schizoaffective disorder which caused him to frequently hallucinate, experience delusions, hear voices, and see ghosts — is contrary to Ohio's sentencing statutes and violates Knight's rights to due process and to a sentencing decision which fairly considers mitigating factors that mitigate his criminal acts and greatly diminish his culpability for them. Ohio Const., Art. I, Section 10 and 16; U.S. Constitution, Amend. V, XIV.

### Assignment of Error No. 5

Knight's trial counsel rendered constitutionally deficient performance which prejudiced Knight when counsel unreasonably stipulated to the superficial, incomplete, and outdated psychiatric reports, failed to object to the sentencing hearing going forward on such an incomplete record of Knight's serious mental illness, and failed to present any evidence or argument about Knight's schizoaffective disorder and its manifestation during the relevant times as constituting substantial mitigation which mitigates Knight's criminal acts and greatly diminishes his culpability for them.

### Law and Analysis

{¶ 11} In the first assignment of error, Knight claims the trial court violated Crim.R. 11.

{¶ 12} Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid. *State v. Medina*, 8th Dist. Cuyahoga No. 109693, 2021-Ohio-1727, ¶ 6, citing *State v. Bishop*,

156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25; *see also State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996) ("When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.").

{¶ 13} The purpose of Crim.R. 11(C) is to provide the defendant with relevant information so that he can make a voluntary and intelligent decision whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 480, 423 N.E.2d 115 (1981). Before accepting a guilty plea in a felony case, a court must comply with Crim.R. 11(C) and "conduct an oral dialogue with the defendant to determine that the plea is voluntary, and the defendant understands the nature of the charges and the maximum penalty involved, and to personally inform the defendant of the constitutional guarantees he is waiving by entering a guilty plea." *State v. Martin*, 8th Dist. Cuyahoga Nos. 92600 and 92601, 2010-Ohio-244, ¶ 5.

{¶ 14} The Supreme Court of Ohio most recently addressed appellate review of a trial court's compliance with Crim.R. 11 in *State v. Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286. According to the *Dangler* Court, the focus in reviewing pleas is not "on whether the trial judge has '[incanted] the precise verbiage' of the rule, * * * but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Id.* at ¶ 12, quoting *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d (1977).

**{¶ 15}** The *Dangler* Court reiterated that "[w]hen a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial court proceedings and that he was prejudiced by that error." *Id.* at ¶ 13, citing *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14-15; *Stewart* at 93, Crim.R. 52.

> Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.

**{¶ 16}** "The test for prejudice is 'whether the plea would have otherwise been made.'" *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, at ¶ 32, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

**{¶ 17}** We now apply the *Dangler* Court's three-question test to the facts in the instant matter.

**{¶ 18}** Preliminarily, we note, despite broadly claiming the trial court failed to comply with Crim.R. 11, Knight does not argue that the trial court failed to properly advise him of his constitutional rights. Our review of the transcript of the sentencing hearing reveals that prior to accepting Knight's guilty pleas, the trial court complied with the constitutional mandate of informing Knight that he was "waiving his privilege against compulsory self-incrimination, his right to jury trial, his right to confront his accusers, and his right of compulsory process of witnesses."

*Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus; *see also* Crim.R. 11(C)(2)(c).  In every instance when the trial court stopped and asked Knight if he understood, he responded in the affirmative.

{¶ 19} In the instant matter, Knight raises an assortment of challenges to the trial court's review of the nature of the charges, the maximum penalties involved, and the effect of his pleas as required by Crim.R. 11(C)(2)(a) and (b).  Because Knight's challenges all involve parts of the rule that relate to nonconstitutional issues, "[Knight] must affirmatively show prejudice to invalidate [his] plea" where the trial court fails to comply fully with Crim.R. 11(C)(2)(a)-(b). *Dangler* at ¶ 14. Again, our review of the transcript of the sentencing hearing reveals a textbook compliance with these requirements.

{¶ 20} In this matter, after exhaustively reviewing the nature of the charges contained in the 23-count indictment, the amendments to, and deletion of, respective counts, the trial court proceeded to review in painstaking detail the maximum penalties and the effects of Knight's pleas.  As relevant here, the following exchange ensued:

> The Court: Based upon the statements of the prosecuting attorney as well as your lawyer, I believe it's your intention to plead guilty to the amended Counts 1, 5, 10, 13, 16, and 20, rape, a felony of the first degree, in violation of 2907.02(A)(2).  * * * Each one of those counts carry a possible prison term of 3 to 11 years in prison and a fine of up to $20,000; do you understand that?
>
> The Defendant:  Yes, ma'am.
>
> The Court:  I also believe it's your intention to plead guilty to the Counts 3, 8, and 22, kidnapping – I'm sorry, the amended Counts 3, 8, and 22, kidnapping, that is a felony of the first degree, in violation of

2905.01(A)(4). Each one of those counts carry a possible penalty from 3 to 11 years in prison and a fine of up to $20,000; do you understand that?

The Defendant: Yes, ma'am.

The Court: And if I were to run these consecutively, or one after the other, you are looking at anywhere from three years in prison up to 99 years in prison, and a fine of up to $180,000; do you understand that?

The Defendant: Yes, ma'am.

Tr. 14-15.

{¶ 21} As evident from the above excerpt, the trial court advised, and Knight understood, that each of the nine counts were first-degree felonies, that carried a minimum prison term of three years and a maximum term of 11 years. The trial court also advised, and Knight understood, that if consecutive sentences were ordered, Knight faced a maximum term of 99 years in prison. Although, among Knight's sundry challenges is the assertion that community control sanctions were an alternative to prison, it is not borne out by the record or by logic.

{¶ 22} Knight also contends that the trial court should have ensured that Knight understood whether merger of allied offenses was a part of the plea deal. However, there is no requirement that a trial court advise a defendant regarding the possible merger of offenses for sentencing or ensure that a defendant understands the merger of offenses before accepting the defendant's guilty pleas. *See, e.g.*, *State v. Simmons*, 8th Dist. Cuyahoga No. 107144, 2019-Ohio-459, ¶ 6 ("Crim.R. 11 does not embrace consideration of merger."); *State v. Reed*, 8th Dist. Cuyahoga No. 105862, 2018-Ohio-3040, ¶ 26 ("[T]here is no requirement in Crim.R. 11 that the

trial court must ensure a defendant understands the merger of offenses for purposes of sentencing before accepting his plea."). As such, we find Knight's present assertion is not well taken.

{¶ 23} The record before us illustrates that trial court engaged in a Crim.R. 11 compliant colloquy by ensuring that Knight understood the constitutional rights he would be waiving by pleading guilty and by fully explaining the nature of the charges, the maximum penalties involved, and the effect of his pleas. As such, we can answer the first *Dangler* question in the affirmative. Given that the record establishes that the trial court complied with the relevant provisions of Crim.R. 11, and that Knight knowingly, intelligently, and voluntarily entered his pleas, we could, rightfully, end our *Dangler* inquiry at this juncture. *Id.* at ¶ 17.

{¶ 24} However, we proceed further to address Knight's assertion that his declining mental and physical condition impacted his guilty pleas. Specifically, Knight claims that his schizoaffective disorder, frequent hallucinations, hearing voices, and seeing ghosts, along with his 58-pound weight loss, possibly due to a staph infection, rendered his pleas not knowingly, voluntarily, and intelligently made.

{¶ 25} Prior to Knight entering his pleas, his defense counsel advised the court as follows:

> Defense Attorney: [Knight] and I have gone over, gone over this quite a few times. He understands – he understands what he's doing. We've already sent him to the psychiatric clinic, so we've been very careful about talking about what happened and what went on. In knowing

that, I know he's making an informed decision in entering these guilty pleas, Your Honor.

Tr. 10.

{¶ 26} The trial court then inquired whether the prosecution and defense counsel had the opportunity to review the two psychiatric reports prepared by the Court Psychiatric Clinic. Both indicated they had reviewed the reports. As previously stated, the psychiatric evaluation indicated that Knight had a provisional diagnosis of unspecified schizophrenia spectrum or objective, was taking antipsychotic medication, as well as depression and mood stabilizer medications. The clinicians concluded that Knight understood the nature and objective of the proceedings against him and that he was capable of adequately assisting in his defense. The clinicians also opined that Knight knew the wrongfulness of the charged conduct.

{¶ 27} With this backdrop, the trial court then engaged Knight in relevant part as follows:

The Court: Are you currently under the influence of any drugs, alcohol, or medication that would adversely affect your ability to understand what's happening or to enter into a plea?

The Defendant: No ma'am.

The Court: Do you, in fact, understand what's happening today?

The Defendant: Yes, ma'am.

Tr. 11-12.

{¶ 28} Although it is clear from the above excerpt that Knight unequivocally indicated that he was not experiencing any adverse effects from his medication, that

his ability to understand or enter a plea was not impacted by his medication, and that he understood what was happening on the day he entered his pleas, Knight now asserts the trial court's inquiry into his mental state was insufficient. However, based on the information in the trial court's possession, regarding the status of Knight's mental health, the inquiry Knight presently contemplates was mandatory, would have been superfluous.

{¶ 29} Moreover, Knight's answers to the trial court's questions did not indicate any confusion about the guilty plea or the charges, nor did they demonstrate any confusion about the proceedings more generally. Importantly, Knight did not engage in any irrational or questionable behavior during the plea hearing. As such, there is nothing in the record that indicates that Knight's mental health issues affected his understanding of the nature of the proceedings that day.

{¶ 30} Finally, in *State v. McClendon*, 8th Dist. Cuyahoga No. 103202, 2016-Ohio-2630, ¶ 16, we stated:

> The mere fact that a defendant suffered from a mental illness or was taking psychotropic medication under medical supervision when he entered a guilty plea is not an indication that his plea was not knowing and voluntary, that the defendant lacked mental capacity to enter a plea or that the trial court otherwise erred in accepting the defendant's guilty plea. *See, e.g.*, *State v. Robinson*, 8th Dist. Cuyahoga No. 89136, 2007-Ohio-6831, ¶ 18; *State v. Harney*, 8th Dist. Cuyahoga No. 71001, 1997 Ohio App. LEXIS 1768, (May 1, 1997); *State v. Bowen*, 8th Dist. Cuyahoga Nos. 70054 and 70055, 1996 Ohio App. LEXIS 5612, (Dec. 12, 1996); *State v. McDowell*, 8th Dist. Cuyahoga No. 70799, 1997 Ohio App. LEXIS 113, (Jan. 16, 1997); *see also State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 71 ("The fact that a defendant is taking * * * prescribed psychotropic drugs does not negate his competence to stand trial.").

*Id.*

{¶ 31} Recently, in *State v. Carson*, 8th Dist. Cuyahoga No. 109592, 2021-Ohio-209, ¶ 12, we reaffirmed that it is well established, that a defendant does not lack mental capacity to enter a plea, or that a trial court erred in accepting a plea, merely because a defendant was suffering from a mental illness or was taking psychotropic medication when he entered the plea. Again, to underscore, a defendant is not incompetent to plead guilty solely because he suffers from a mental illness. *State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 41, citing *State v. McMillan*, 2017-Ohio-8872, 100 N.E.3d 1222, ¶ 29 (8th Dist.), citing *State v. Calabrese*, 8th Dist. Cuyahoga No. 104151, 2017-Ohio-7316, ¶ 16.

{¶ 32} Following our review of the record, we find that the trial court fully complied with Crim.R. 11 and that Knight entered his guilty pleas knowingly, intelligently, and voluntarily.

{¶ 33} Accordingly, we overrule the first assignment of error.

{¶ 34} In the second assignment of error, Knight argues the trial court's failure to merge the rape and kidnapping charges violated Ohio' merger law, his right to due process and double jeopardy protection against cumulative punishment for the same offense.

{¶ 35} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, and the Ohio Constitution, Article I, Section 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the

same offense. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *State v. Martello,* 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7.

**{¶ 36}** In Ohio, this constitutional protection is codified in R.C. 2941.25. *State v. Boyd,* 8th Dist. Cuyahoga No. 109052, 2020-Ohio-5181, ¶ 36, citing *State v. Cabrales,* 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 23. "Merger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.'" *Id.,* citing *Cabrales* at ¶ 23, fn. 3, quoting *Maumee v. Geiger,* 45 Ohio St.2d 238, 244, 344 N.E.2d 133 (1976).

**{¶ 37}** Pursuant to R.C. 2941.25(A), "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

**{¶ 38}** Although R.C. 2941.25(A) prohibits multiple punishments for two or more offenses resulting from the same conduct, it is possible, however, for an accused to expressly waive the protection afforded by R.C. 2941.25, such as by "stipulating in the plea agreement that the offenses were committed with separate animus." *State v. Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 20, quoting *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 29.

**{¶ 39}** We have repeatedly held that where the transcript demonstrates that the state and defense counsel agreed that offenses were not allied, the issue of allied offenses is waived. *State v. Bonner*, 8th Dist. Cuyahoga No. 108273, 2019-Ohio-5243, ¶ 4. *See also State v. Albright*, 8th Dist. Cuyahoga, 2019-Ohio-1998, ¶ 34; *State v. Black*, 2016-Ohio-383, 58 N.E.3d 561 (8th Dist.); *State v. Booker*, 8th Dist. Cuyahoga No. 101886, 2015-Ohio-2515.

**{¶ 40}** In this matter, after accepting Knight's pleas, the trial court addressed the prosecutor and defense counsel, as follows: "I don't know if you've already discussed merger, but prior to sentencing, make sure if there are any counts that you believe merge, that the two of you get together so perhaps you can stipulate to those at the time of sentencing."

**{¶ 41}** The record of the sentencing hearing reflects the following discussion regarding merger:

> The Court: How do you address the issue of merger? Are you saying the kidnapping and the rapes, are those merged or not? What is your position?
>
> Defense Attorney: Probably not. I would say the kidnapping should merge. But the rapes, you certainly have two different victims.
>
> The Court: I'm talking the kidnapping versus the rapes.
>
> Defense Attorney: I would ask they be merged. It's all at once. You can't have one without the other I don't think.
>
> The Court: Regarding merger on behalf of the State?
>
> Asst. Prosecutor: It was my agreement these counts would not merge for sentencing purposes.
>
> The Court: You have already talked about this?

Asst. Prosecutor: Pursuant to the plea agreement, otherwise, it wouldn't have been marked in this manner. So it was with the agreement of no merger.

Defense Attorney: You know that, your Honor, in our mind, that doesn't matter because just the rapes alone without merger there is so much time over [Knight's] head we know it's — if the Court chose, the Court could give enough time that [Knight] won't — will be expired before the time runs. We understand that. Thank you, your Honor.

Tr. 32-33.

{¶ 42} Despite Knight's present assertions, the record before us indicates an agreement that the rape and kidnapping offense would not merge. Although defense counsel initially stated the offenses should merge, defense counsel did not dispute the prosecutor's statement that there was an agreement that the offense would not merge. Neither did Knight interject to protest the prosecutor's statement of the agreement not to merge the offenses. To the contrary, defense counsel offered a rationale, which was reasonable under the circumstances, as to why a merger would be meaningless.

{¶ 43} We are satisfied that the transcript demonstrates that the state and the defense agreed that the offense would not merge for sentencing. This stipulation is in keeping with what *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 20, and its progeny contemplates. Based on the demonstrated stipulation, Knight waived the protection afforded by R.C. 2941.25.

{¶ 44} Accordingly, we overrule the second assignment of error.

{¶ 45} We will address Knight's third and fifth assignments of error together because they both claim that he was denied the effective assistance of counsel.

{¶ 46} To establish ineffective assistance of counsel, the represented party must demonstrate: (1) deficient performance by counsel, namely that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the party, or a reasonable probability that but for counsel's errors, the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶ 47} In Ohio, every properly licensed attorney is presumed to be competent. *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Thus, in evaluating counsel's performance on a claim of ineffective assistance of counsel, the court must give great deference to counsel's performance and "indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland* at 689.

{¶ 48} Within these assignments of error, Knight argues his defense counsel was ineffective for failing to object to the trial court's failure to merge the rape and kidnapping offenses. However, in light of our conclusion, relative to the second assignment of error, that the trial court did not err by not merging the rapes and kidnapping offenses, Knight's present claim, based on defense counsel's alleged failure to object to individual sentences, is now rendered to be without merit.

{¶ 49} Relevant to this matter, we have rejected ineffective assistance of counsel arguments based on counsel's advice in entering into a stipulation of non-merger of allied offenses as part of a plea agreement because defendants are unable to demonstrate prejudice where they secure reduced charges and potential sentences. *State v. Wright*, 8th Dist. Cuyahoga No. 103823, 2016-Ohio-5248, ¶ 11, citing *State v. Yonkings*, 8th Dist. Cuyahoga No. 98632, 2013-Ohio-1890, ¶ 8-11.

{¶ 50} Likewise, the failure to object is not per se ineffective assistance of counsel. "'Objecting is a tactical decision.'" *In re L.S.*, 8th Dist. Cuyahoga No. 110351, 2021-Ohio-3353, ¶ 36, citing *State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583, at ¶ 25, quoting *State v. Johnson*, 7th Dist. Jefferson No. 16 JE 0002, 2016-Ohio-7937, ¶ 46. As a general matter, defense counsel's tactical decisions and trial strategies, even "debatable" ones, do not constitute ineffective assistance of counsel. *Id. See, e.g., State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101, 111; *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, at ¶ 35; *State v. Foster*, 8th Dist. Cuyahoga No. 93391, 2010-Ohio-3186, ¶ 23.

{¶ 51} As previously discussed, Knight's defense counsel gave a reasonable and strategic rationale for agreeing to the nonmerger of the allied offenses. As such, we decline to find that defense counsel provided deficient performance.

{¶ 52} Knight next claims that defense counsel unreasonably stipulated to what Knight characterizes as superficial, incomplete, and outdated psychiatric reports and failed to object to the sentencing hearing going forward amidst his

mental health status. Again, we must conclude that defense counsel did not render deficient service.

{¶ 53} As discussed in the first assignment of error, the record indicates that although suffering from severe mental illness, Knight's guilty pleas were knowingly, intelligently, and voluntarily entered. Importantly, in an abundance of caution and undoubtedly with an eye towards sentencing, defense counsel requested that the trial court again refer Knight to the psychiatric clinic for the preparation of a mitigation report. In making the request, defense counsel acknowledged that the trial court had honored previous requests and indicated that the request was not being made to abuse the court's resources and time. Instead, the request was being made because he noted a decline in Knight's mental condition and was geared towards the court obtaining even greater insight into Knight's condition than it already possessed. As previously stated, the trial court ordered the preparation of the mitigation report.

{¶ 54} On this record, we decline to find that defense counsel rendered deficient performance.

{¶ 55} Accordingly, we overrule the third and fifth assignments of error.

{¶ 56} In the fourth assignment of error, Knight argues that the 82-year sentence was contrary to law.

{¶ 57} We review felony sentences under the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase,

reduce, or otherwise modify a sentence, or vacate a sentence and remand for resentencing if it "clearly and convincingly finds" that the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law.

{¶ 58} R.C. 2929.14(C)(4), provides that the trial court can impose consecutive sentences if it finds that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.
>
> b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

{¶ 59} In making the consecutive findings, a trial court is not required to give reasons supporting its decision to impose consecutive sentences. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 27. Rather, "as long as the reviewing court can discern that the trial court engaged in the correct analysis

and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 60} Knight can challenge the 82-year consecutive sentence in two ways. First, he can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4). *State v. Wagner*, 8th Dist. Cuyahoga No. 109678, 2021-Ohio-3107, ¶ 9, citing *State v. Johnson*, 8th Dist. Cuyahoga No. 102449, 2016-Ohio-1536, ¶ 7; R.C. 2953.08 (G)(2)(b); *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). Second, he can argue that the record does not support the findings made under R.C. 2929.14(C)(4). *Id.*; R.C. 2953.08(G)(2)(a). *Nia* at ¶ 16.

{¶ 61} In this matter, Knight does not claim the trial court failed to make the statutorily mandated findings. In fact, our independent review of the record indicates that the trial court made the necessary findings and engaged in the proper analysis as required by R.C. 2929.14(C)(4).

{¶ 62} Instead, Knight argues his 82-year consecutive sentence is contrary to law. Specifically, Knight contends the trial court failed to consider his disabling mental illness, and, in so doing, the sentence does not comport with sentencing purposes of R.C. 2929.11 and the sentencing factors of R.C. 2929.12. This assertion is not well taken.

{¶ 63} The first matter the trial court addressed at the sentencing hearing was the reports from the psychiatric clinic. As previously noted, the trial court determined that both defense counsel and the prosecuting attorney had reviewed

the reports. Both parties indicated they had reviewed the reports and proceeded to stipulate to the findings therein.

{¶ 64} Of relevance, not only was Knight's mental illness addressed at the sentencing hearing, but it was also addressed at every step of the proceedings. When examining whether the record supports the trial court's consecutive-sentence findings, support for the court's findings is not confined to the trial court's comments at sentencing but rather may appear anywhere in the record. *State v. Gilcrease*, 8th Dist. Cuyahoga No. 108148, 2020-Ohio-487, ¶ 83, citing *State v. Johnson*, 2018-Ohio-3670, 119 N.E.3d 914, ¶ 52 (8th Dist.); *State v. Gatewood*, 8th Dist. Cuyahoga No. 101271, 2015-Ohio-1288, ¶ 13, citing *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 20-22 (8th Dist.). Because the record reveals that the issue of Knight's mental illness was identified and addressed throughout the entire proceeding, his present assertion is not well taken.

{¶ 65} Additionally, prior to imposing the consecutive sentences, the trial court heard from defense counsel, who acknowledged the damage Knight had caused to Victims 1 and 2, and the entire family, describing the damage as incomprehensible. Defense counsel again highlighted Knight's mental illness, but stated:

> Was he competent? Yeah. He knew he was wrong. In fact, I think the evidence will show he even apologized after he took advantage these poor, poor, poor girls. He'd used them, but he knew that what he was doing was wrong. * * * It's a very sad situation. He was picked up — Judge, if you remember the facts, he tried to kill himself. He knows he's wrong. He is at the hospital trying to kill himself. He immediately tells the police, "I did it."

**{¶ 66}** The trial court also heard from several people, including Victims 1 and 2's maternal aunt, G.B., who stated that Knight's actions had torn the family apart. G.B. stated:

> He went from the oldest one, raping her. So when you raped her and you felt like you needed help, you should have gotten it then. He stayed in the household and went from one child to the next child.
>
> * * *
>
> Nobody took the time to find out why they went from straight A students, church-going straight A students, to not going to school, not coming home, and running away. That was the reason why, because they got tired of getting raped.

**{¶ 67}** Both Victim 1 and Victim 2 were present and emphasized how much they had suffered and continued to suffer as result of Knight's abuse. Both stated that when their mother married Knight, they loved him like a father figure, looked up to him, but he turned out to be a monster. Victim 2 stated:

> I lost my virginity at 12 because of [Knight]. It's not the way that I should have lost it. And now I have a one-year-old child. She's going to be two next month. When she gets older, how am I supposed to tell my baby that the person you grew up calling Papa, that's your father? How am I supposed to explain that to my daughter?
>
> * * *
>
> Five years straight. Five years. I wish that I would have said something sooner. * * * I end up carrying your child a whole eight and a half months and thinking it was another boy's child, and then come to find out with DNA results, no it is your stepdad's child. How am I supposed to live with that, and how am I supposed to go on knowing the person that I considered a father doing what he did.
>
> * * *
>
> All those days I spent in the house getting molested, being bribed with cell phones. You go towards my weakness cause you know I'd give in.

Cell phones, technology, electronics. My mother wouldn't let me use it so he bribed me with things that I wanted. He went for my weak spot, and I don't like that. Like why?

**{¶ 68}** Knight addressed the court as follows:

I'm not looking for mercy. What I did shouldn't have never happened. I hurt a lot of people with the decisions that I made. It affected so many, so many, and I'm really sorry, you know. These girls put their trust in me, and I supposed to protect them, and I did the opposite. I am sorry for that.

**{¶ 69}** After hearing all the statements made at the hearing, including the above sampling, the trial court stated it had weighed all the pertinent factors under R.C. 2929.11 and 2929.12 and was imposing the sentence based on all the evidence before the court. Importantly, although a trial court must consider the purposes and principles of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, these are not fact-finding statutes. *State v. Franklin*, 8th Dist. Cuyahoga No. 107482, 2019-Ohio-3760, ¶ 41; *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 42. Knight's assertions to the contrary, the trial court is not required to make any specific findings on the record regarding its consideration of the relevant R.C. 2929.11 and 2929.12 factors. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31.

**{¶ 70}** Further, as long as the sentence is within the statutory range for the offense, and the court considers both the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12, a trial court's imposition of any prison term, even a maximum prison term, for a felony conviction is not contrary to law. *State v. Cedeno-*

*Guerrero*, 8th Dist. Cuyahoga No. 108097, 2019-Ohio-4580, ¶ 18, citing *State v. Woodard*, 8th Dist. Cuyahoga No. 106300, 2018-Ohio-2402, ¶ 35; *State v. Keith*, 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 10, 16.

{¶ 71} Finally, Knight's argument, deployed throughout, that his 82-year sentence was excessive, parallels arguments we have previously rejected. Recently, in *State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, also involving a claim that the prison sentence was "excessive" and not supported by the record, we stated:

> In *Jones*, the Ohio Supreme Court recently held that R.C. 2953.08(G)(2) does not authorize an appellate court to review "whether the record supports the sentence as a whole under R.C. 2929.11 and 2929.12." (Emphasis deleted.) Slip Opinion No. 2020-Ohio-6729, at ¶ 30.
>
> The court reasoned that R.C. 2953.08(G)(2)(a) "clearly does not provide a basis for an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12 because * * * R.C. 2929.11 and 2929.12 are not among the statutes listed in the provision" and that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12" because a sentence is not "otherwise contrary to law" within the meaning of R.C. 2953.08(G)(2)(b) if it is not supported by the record. *Id.* at ¶ 31-32, 39.
>
> The court further indicated that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 42. Accordingly, this court cannot review D-Bey's sentences to determine whether they are "excessive" or otherwise not "supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39.

*Id.* at ¶ 75.

{¶ 72} Again, in *State v. Lashley*, 8th Dist. Cuyahoga No. 110250, 2021-Ohio-3101, we reaffirmed, based on *Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, that '[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Id.* at ¶ 20, citing *Jones* at ¶ 42.

{¶ 73} Here, like *D-Bey*, even if Knight's sentence was subject to such a review, we would find no reversible error. Knight's mental illness was only one factor for the trial court to consider. The record reflects that the trial court considered the purposes and principles of sentencing under R.C. 2929.11, the relevant sentencing factors under R.C. 2929.12. As such, we conclude the trial court complied with its obligations under R.C. 2929.11 and 2929.12 and Knight's sentence was not contrary to law.

{¶ 74} Accordingly, we overrule the fourth assignment of error.

{¶ 75} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY J. BOYLE, A.J., and
SEAN C. GALLAGHER, J., CONCUR